RICHARD J. O'BRIEN, Plaintiff v. MABEL D. O'BRIEN, Defendant

No. COA97-1484

(Filed 1 December 1998)

**1. Divorce— equitable distribution—commingling of marital and separate property—no transmutation into marital property**

The mere commingling of marital funds with the wife's separate funds in an investment account did not automatically transmute the separate property into marital property.

**2. Divorce— equitable distribution—investment account— tracing of separate property**

Defendant wife met her burden of "tracing out" her separate property in an investment account where the initial deposit into the account consisted of her inheritance from her father's estate;

O'BRIEN v. O'BRIEN

[131 N.C. App. 411 (1998)]

marital funds of $4,550 were later deposited into the account; the sum of $38,658 was thereafter withdrawn from the account for marital purposes; the $4,550 deposit of marital funds was entirely consumed by the subsequent withdrawal; and the only funds remaining in the account were the wife's separate funds.

**3. Divorce— equitable distribution—investment account— active or passive appreciation—factors**

If either or both of the spouses perform substantial services during the marriage which result in an increase in the value of an investment account, that increase is to be characterized as an active increase and classified as a marital asset. In making the determination of whether the services of a spouse are substantial, the trial court should consider, among other relevant facts and circumstances of the particular case, the following factors: (1) the nature of the investment; (2) the extent to which the investment decisions are made only by the party or parties, made by the party or parties in consultation with their investment broker, or solely made by the investment broker; (3) the frequency of contact between the investment broker and the parties; (4) whether the parties routinely made investment decisions in accordance with the broker's recommendation, and the frequency with which the spouses made investment decisions contrary to the broker's advice; (5) whether the spouses conducted their own research and regularly monitored the investments in their accounts, or whether they primarily relied on information supplied by the investment broker; and (6) whether the decisions or other activities, if any, made solely by the parties directly contributed to the increased value of the investment account.

**4. Divorce— equitable distribution—investment account— passive increase**

An increase in the value of an investment account established with the wife's separate funds was a passive increase and thus the wife's separate property where the evidence showed that the spouses jointly met with the wife's broker and routinely chose between investment alternatives based on the broker's recommendations.

**5. Evidence— corroboration—gifts—donor's intent**

In an equitable distribution proceeding in which letters from defendant wife's aunt stating that two $10,000 checks she sent to plaintiff husband were "part of the inheritance that I am leaving

to [the wife]" and testimony about those letters were admitted without objection, testimony by the wife's cousin about conversations she had with the aunt concerning her intention in sending those checks to the husband was not inadmissible hearsay but was admissible to corroborate the previous evidence of the aunt's intent.

**6. Divorce— equitable distribution—checks to husband— gifts to wife—wife's separate property**

The evidence in an equitable distribution proceeding supported a finding by the trial court that two $10,000 checks sent by defendant wife's aunt to plaintiff husband in consecutive years were in fact gifts to the wife and were her separate property where the aunt also gave two $10,000 checks to the wife, and letters sent with the checks and other testimony tended to show that the aunt intended to make a gift of $40,000 to the wife by taking advantage of the gift tax exclusion.

**7. Divorce— equitable distribution—classification of interest in mother's trust—harmless error**

Plaintiff husband was not prejudiced by any error in the trial court's classification of the interest in his mother's trust as irrevocable rather than revocable where the trial court did not classify, value or distribute an interest in the trust or consider the trust as a distributional factor.

**8. Divorce— equitable distribution—equal division—supported by findings**

The trial court did not err by failing to award plaintiff husband a greater share of the marital property and a lesser share of the marital debt and by awarding an equal share of marital property to both parties where the trial court found that plaintiff husband has a larger income, a vested retirement benefit, and a substantial employee savings plan benefit while defendant wife has a large separate property estate; the wife does not have a retirement benefit or expectation of one through her employment; the wife worked and provided homemaking services as a spouse to assist the husband in obtaining his engineering degree and in maintaining his employment as an engineer, and the husband worked and provided homemaking services as a spouse to assist the wife in obtaining her accounting degree and licensing as a CPA; and the increase in value of the wife's separate property investments was due to passive appreciation.

Appeal by plaintiff from judgment entered 2 April 1997 and order entered 16 April 1997 by Judge Michael A. Paul in Beaufort County District Court. Heard in the Court of Appeals 27 August 1998.

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell and Cary E. Close, for plaintiff appellant.*

*Jeffrey L. Miller for defendant appellee.*

HORTON, Judge.

Plaintiff-husband and defendant-wife were married on 24 May 1975, separated on 7 August 1995, and divorced on 24 September 1996. No children were born of the marriage. Following their separation, plaintiff instituted this equitable distribution action on 28 December 1995 in which he requested the trial court award him more than an equal share of the marital property and less than an equal share of the marital debt. Defendant answered and counterclaimed, requesting the trial court award an equitable distribution of the martial property and marital debt and determine the parties' separate property. Following a non-jury trial, the trial court entered an Order and Judgment of Equitable Distribution on 2 April 1997 in which it awarded an equal distribution of the marital property and designated certain items to be separate property not subject to distribution. Plaintiff filed a motion on 11 April 1997 to amend the findings, make additional findings and amend the judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 52(b), which was denied by the trial court on 16 April 1997. Plaintiff filed notice of appeal from both the 2 April 1997 order and the 16 April 1997 order. Thereafter, pursuant to the Order and Judgment of Equitable Distribution, a Qualified Domestic Relations Order was entered on 22 October 1997, but is not a subject of appeal in this case.

The evidence before the trial court tends to show that in 1986, after receiving an inheritance from her father of approximately $163,000.00, defendant opened an investment account with Wheat First Securities. She deposited about $158,000.00 of her inheritance, as well as a $10,000.00 gift from her Aunt Mabel Dozier Stone (Aunt Mabel), into this investment account. On the advice of her broker, defendant had the investment account listed in the joint names of the parties, with a right of survivorship. From November 1986 until July 1989, the parties deposited a total of $4,550.00 of marital funds into this investment account, and withdrew $38,658.00 from the investment account for marital purposes. This investment account

remained with Wheat First Securities until July 1989, at which time it was transferred to Interstate Johnson Lane when the parties' investment broker changed firms. At the time of the transfer, the investment account was valued at $138,161.00, or nearly $30,000.00 less than the amount of the initial deposit.

The investment account remained at Interstate Johnson Lane until January 1991, when it again followed the investment broker to his new position at Shearson Lehman. At the time of the transfer to Shearson Lehman, the investment account had depreciated as a result of market forces, and was valued at $119,714.00. Also, during this time Aunt Mabel was in poor health and was attempting to deplete her estate by distributing portions to her intended beneficiaries in order to avoid estate tax consequences. Therefore, Aunt Mabel made gifts to plaintiff and defendant in December 1992 and January 1993 for $10,000.00 each, for a total of $40,000.00. Along with each gift Aunt Mabel included a note describing the purpose of her gifts. The 28 December 1992 note to plaintiff read, in pertinent part, as follows:

Dear Dick:

I have enclosed a check for $10,000 which is part of the inheritance I am leaving Mabel. Since the law allows only $10,000 per family member, I am sending this gift for her in your name to remove assets from my estate that would otherwise be taxed at a very high rate if left in the estate. Please deposit upon receipt.

. . . .

Mabel D. Stone

Aunt Mabel's 15 January 1993 note contained similar language, stating that she had "enclosed a check for $10,000 which is part of the inheritance that I am leaving to Mabel." Of this $40,000.00 in gifts from Aunt Mabel, $24,990.00 was deposited into the investment account at Shearson Lehman, and $9,970.00 was used to purchase a 1993 Volvo 850 automobile for defendant.

In addition to the $24,990.00 in gift money invested in the investment account, the investment account increased in value by approximately $44,000.00 due to dividends, share reinvestment gains and market value gains. Further, approximately $6,500.00 in management fees were charged against the investment account, and $1,035.00 was withdrawn from the investment account. In May 1994, the Shearson Lehman investment account was valued at $181,452.00. The invest-

ment account remained at Shearson Lehman until May 1994, when it was transferred to Scott & Stringfellow. While the investment account was at Scott & Stringfellow, defendant received an inheritance from Aunt Mabel's estate totaling $62,841.00, of which she deposited $56,851.00 into the investment account. The investment account remained there until the parties' separation in August 1995.

After hearing all of the evidence, the trial court found that the $40,000.00 in gifts from Aunt Mabel were intended to be gifts to defendant in the total amount of $40,000.00, and not gifts to plaintiff. Further, the trial court determined that other than $4,550.00 of marital funds deposited in the investment account when it was with Wheat First Security, all of which was withdrawn and spent for marital purposes, no other marital property or earnings of the parties was ever deposited to or invested in the investment account. Consequently, the trial court determined the investment account to be the separate property of defendant and not subject to distribution. In sum, the trial court found $308,465.12 of the total estate to be the separate property of defendant and $277,578.57 to be marital property. After determining that an equal division of the marital property would be equitable, the trial court awarded plaintiff $158,677.28 of the marital estate, and awarded defendant $118,901.29 of the marital estate. In addition, the trial court ordered plaintiff to pay defendant a distributive award of $19,888.00 in order to equalize the distribution.

On appeal, plaintiff contends the trial court erred by (1) classifying the investment account and the gifts from Aunt Mabel as defendant's separate property rather than the marital property of the couple; (2) admitting hearsay testimony from Aunt Mabel's relatives about her intent in regard to the four gifts of $10,000.00 each to plaintiff and defendant in December 1992 and January 1993; (3) finding that plaintiff was an irrevocable one-third beneficiary of his mother's trust when the express terms of the trust dictate plaintiff's interest was revocable; and (4) failing to award plaintiff an unequal distribution of the marital property and debt.

I.

At the outset, we note that the distribution of marital property is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *Beightol v. Beightol*, 90 N.C. App. 58, 60, 367 S.E.2d 347, 348, *disc. review denied*, 323 N.C. 171, 373 S.E.2d 104 (1988) (citation omitted). In order to show an abuse of discretion, a party must show "that the decision was unsupported by

O'BRIEN v. O'BRIEN

[131 N.C. App. 411 (1998)]

reason and could not have been the result of a competent inquiry." *Id.* As such, the findings of fact are conclusive on appeal if supported by any competent evidence. *Id.*

In an equitable distribution case filed before 1 October 1997, the trial court must undergo a three-step analysis: (1) identify what is marital property and what is separate property; (2) calculate the net value of the marital property; and (3) distribute the marital property in an equitable manner. *Id.* at 63, 367 S.E.2d at 350. In this case, we are concerned with the first step, the classification of the investment account as either marital property or separate property.

The main contention raised by plaintiff's appeal is that the trial court improperly classified the investment account as defendant's separate property. According to plaintiff, although the money used to begin the investment account was part of defendant's inheritance, the investment account should nevertheless be classified as marital property for the following reasons: (1) marital funds were commingled with the inherited funds, thus "transmuting" the investment account from separate property to marital property; (2) defendant has failed to "trace out" the $4,550.00 in marital funds which were deposited into the investment account; and (3) plaintiff actively participated with defendant in managing the investment account by making certain decisions which ultimately led to the increased value of the investment account. For purposes of clarity, we will address each of these points separately.

Before addressing plaintiff's contentions, we note that in order to determine the nature of certain property, it is helpful to consult the definitions of marital property and separate property provided in N.C. Gen. Stat. § 50-20(b), which defines the terms as follows:

(1) "Marital property" means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property . . . in accordance with subdivision (2) . . . of this subsection. . . . It is presumed that all property acquired after the date of marriage and before the date of separation is marital property except property which is separate property under subdivision (2) of this subsection. This presumption may be rebutted by the greater weight of the evidence.

> (2) "Separate property" means all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage. . . . Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance. The increase in value of separate property and the income derived from separate property shall be considered separate property.

N.C. Gen. Stat. § 50-20(b) (Cum. Supp. 1997). Furthermore, in cases such as this there are dual burdens of proof. First, the party seeking to classify the investment as marital property must show by the preponderance of the evidence that the property is presently owned, and was acquired by either of the spouses during the course of the marriage and before the date of separation. *Smith v. Smith,* 111 N.C. App. 460, 479, 433 S.E.2d 196, 208, *disc. review denied,* 335 N.C. 177, 438 S.E.2d 202 (1993), *reversed in part on other grounds,* 336 N.C. 575, 444 S.E.2d 420 (1994). Thereafter, the party seeking to classify the investment account as separate property must show by the preponderance of the evidence that the property falls within the statutory definition of separate property. *Id.* at 480, 433 S.E.2d at 208. If both parties meet their burdens, " 'then under the statutory scheme of N.C.G.S. § 50-20(b)(1) and (b)(2), the property is excepted from the definition of marital property and is, therefore, separate property.' " *Id.* (quoting *Atkins v. Atkins,* 102 N.C. App. 199, 206, 401 S.E.2d 784, 788 (1991)).

A. "Transmutation" of Separate Property into Marital Property

[1] According to plaintiff, although the initial deposit into the investment account was without question the separate property of defendant, the subsequent actions by the parties of commingling marital funds with separate funds "transmuted" the nature of the investment account from separate property to marital property. The doctrine of transmutation is well developed in Illinois, where it was first adopted by judicial decision and later by legislative enactment. *Wade v. Wade,* 72 N.C. App. 372, 381, 325 S.E.2d 260, 269, *disc. review denied,* 313 N.C. 612, 330 S.E.2d 616 (1985). Under this theory, "the affirmative act of augmenting nonmarital property by commingling it with marital property" creates a rebuttable presumption that all the property has

been transmuted into marital property. *In re Marriage of Smith*, 427 N.E.2d 1239, 1245-46 (Ill. 1981).

However, as plaintiff concedes, this Court has expressly rejected the theory of transmutation. *Wade*, 72 N.C. App. at 381, 325 S.E.2d at 269. We find, therefore, that the mere commingling of marital funds with separate funds alone does not automatically transmute the separate property into marital property.

### B. "Tracing Out" of Separate Funds

[2] Next, plaintiff contends that regardless of whether the investment account was transmuted into marital property, defendant failed to meet her burden of "tracing out" her separate property. Here, it is clear that the investment account was begun during the marriage and prior to the date of separation. However, it is equally clear that the initial deposit into the investment account was from defendant's separate property, consisting of her inheritance from her father's estate. Therefore, defendant has met her burden of establishing the separate nature of the property.

Despite the fact that defendant has met her burden of proving the separate nature of the investment account, plaintiff contends defendant must also "trace out" her separate property from the $4,550.00 of marital funds which were deposited into the investment account. However, the $4,550.00 of marital funds deposited into the investment account was the only deposit of marital funds into the investment account. Further, soon after this deposit, $38,658.00 was withdrawn from the account.

After considering this evidence, the trial court concluded that the $4,550.00 deposit of marital funds was entirely consumed by the subsequent withdrawal, such that no marital funds remained in the investment account. Since there is competent evidence in the record to support this finding, we are bound by it. *See Beightol*, 90 N.C. App. at 60, 367 S.E.2d at 348. Therefore, after these marital funds were removed, the only funds remaining in the investment account were separate funds. This being the case, we find that defendant has met her burden of "tracing out" her separate property.

### C. Active vs. Passive Appreciation of the Investment Account

Finally, plaintiff contends that he actively participated in the management of the investment account, such that the account should be

treated as marital property. It is well recognized that there is a distinction between active and passive appreciation of separate property. Active appreciation refers to financial or managerial contributions of one of the spouses to the separate property during the marriage; whereas, passive appreciation refers to enhancement of the value of separate property due solely to inflation, changing economic conditions or other such circumstances beyond the control of either spouse. *McLeod v. McLeod,* 74 N.C. App. 144, 148, 327 S.E.2d 910, 913, *cert. denied,* 314 N.C. 331, 333 S.E.2d 488 (1985); *see also Deffenbaugh v. Deffenbaugh,* 877 S.W.2d 186, 188 (Mo. Ct. App. 1994). Furthermore, the party seeking to establish that any appreciation of separate property is passive bears the burden of proving such by the preponderance of the evidence. *Smith,* 111 N.C. App. at 480, 433 S.E.2d at 208.

The issue of the characterization of the appreciation of investment accounts, mutual funds, and other stocks or securities, as active or passive has not been previously addressed in North Carolina. Most of our cases dealing with the active/passive appreciation of separate property have dealt with closely held corporations. *See, e.g., McLeod,* 74 N.C. App. 144, 327 S.E.2d 910; *Phillips v. Phillips,* 73 N.C. App. 68, 326 S.E.2d 57 (1985); *Lawing v. Lawing,* 81 N.C. App. 159, 344 S.E.2d 100 (1986). Therefore, we will look to other jurisdictions for guidance.

In *Deffenbaugh,* 877 S.W.2d 186, the Missouri Court of Appeals was presented with the question of whether the appreciated value of 425 shares of a mutual fund was marital or separate property. The evidence tended to show that the shares were originally purchased with the wife's separate property. According to the husband, he regularly looked at the quarterly statements, corresponded with and spoke to the investment broker, and regularly gave advice to his wife. *Id.* at 188. However, the court held that these activities "were within the purview of ordinary and usual spousal duties; and as such, did not transform the increased value of the original shares of the mutual fund into [separate] property." *Id.* Further, the Missouri Court of Appeals has repeatedly held that several factors must be shown in order for a spouse to be awarded a proportionate share of the increase in value of the other spouse's separate property, including: (1) a contribution of substantial services; (2) a direct correlation between those services and the increase in value; (3) the amount of the increase in value; (4) the performance of the services during the marriage; and (5) the value of the services, lack of compensation,

or inadequate compensation. *Meservey v. Meservey*, 841 S.W.2d 240, 245-46 (Mo. Ct. App. 1992); *Klaus v. Klaus*, 918 S.W.2d 407, 409 (Mo. Ct. App. 1996).

[3] We believe that the multi-factorial approach of the Missouri Court of Appeals is consistent with the public policy considerations incorporated in our Equitable Distribution Act, and we adopt that approach. We hold, therefore, that if either or both of the spouses perform substantial services during the marriage which result in an increase in the value of an investment account, that increase is to be characterized as an active increase and classified as a marital asset. In making the determination of whether the services of a spouse are substantial, the trial court should consider, among other relevant facts and circumstances of the particular case, the following factors: (1) the nature of the investment; (2) the extent to which the investment decisions are made *only* by the party or parties, made by the party or parties in consultation with their investment broker, or solely made by the investment broker; (3) the frequency of contact between the investment broker and the parties; (4) whether the parties routinely made investment decisions in accordance with the recommendation of the investment broker, and the frequency with which the spouses made investment decisions contrary to the advice of the investment broker; (5) whether the spouses conducted their own research and regularly monitored the investments in their accounts, or whether they primarily relied on information supplied by the investment broker; and (6) whether the decisions or other activities, if any, made solely by the parties directly contributed to the increased value of the investment account.

[4] Here, the trial court did not find that the actions of the spouses in jointly meeting with the wife's broker and routinely choosing between investment alternatives based on the recommendation of the investment broker rose to the level of substantial activity. The trial court determined that the defendant-wife had established by the preponderance of the evidence that any appreciation of the investment account was purely passive. After careful review, we find that the trial court's findings support its conclusions of law. Therefore, we overrule this assignment of error.

## II.

[5] Next, plaintiff contends the trial court erred by (1) improperly allowing defendant and her cousin, Wilma Dozier Mario (Cousin Wilma), to testify as to Aunt Mabel's intention with regard to the

two $10,000.00 checks, and (2) classifying the two $10,000.00 checks from Aunt Mabel to plaintiff as defendant's separate property.

With regard to plaintiff's first contention, defendant was allowed to testify, without objection, about certain letters which Aunt Mabel included with the four checks. As previously stated, Aunt Mabel sent plaintiff and defendant each a check for $10,000.00 in December 1992, and then again in January 1993. The purpose of these checks was to reduce the amount of Aunt Mabel's estate in order to relieve the estate tax burden by taking advantage of the $10,000.00 annual exclusion. However, Aunt Mabel specifically stated in her two letters to plaintiff that the $10,000.00 checks were "part of the inheritance that I am leaving to Mabel." These letters were then introduced into evidence without objection.

Thereafter, Cousin Wilma was allowed to testify, over plaintiff's objection, about Aunt Mabel's intent with regard to the four $10,000.00 checks. According to the trial court, this testimony was admissible as corroboration of the previous evidence of Aunt Mabel's intent elicited from defendant. *See Bowden v. Bell,* 116 N.C. App. 64, 446 S.E.2d 816 (1994) (where this Court held that "[i]t is clear that out-of-court statements offered to corroborate the prior testimony of a witness are not hearsay." *Id.* at 70, 446 S.E.2d at 821).

Here, the letters from Aunt Mabel were introduced without objection to show her donative intent with regard to the four $10,000.00 checks. Thereafter, Cousin Wilma corroborated this evidence with her testimony regarding conversations she had with Aunt Mabel. We find that this testimony was not hearsay evidence offered for the truth of the matter asserted, but rather was corroborative evidence of Aunt Mabel's intent. As such, the trial court did not err by allowing this testimony, and we overrule this assignment of error.

[6] Next, plaintiff contends the trial court erred by finding the two $10,000.00 checks written by Aunt Mabel to plaintiff were the separate property of defendant. In its 2 April 1997 order, the trial court made the following findings with regard to Aunt Mabel's intent:

14. In December [1992] and January [1993], defendant's Aunt Mabel Dozier Stone was in ill health. [Aunt Mabel] was attempting to distribute a portion of her estate to intended beneficiaries prior to her death in order to avoid estate tax consequences. In December [1992], [Aunt Mabel] wrote two $10,000 checks—one payable to defendant individually and one payable to plaintiff

O'BRIEN v. O'BRIEN

[131 N.C. App. 411 (1998)]

individually. In January [1993], [Aunt Mabel] wrote two more $10,000 checks—one to plaintiff individually and one to defendant individually. She also wrote a letter to plaintiff describing her intent and design that the checks payable to plaintiff were in fact gifts for the defendant. [Aunt Mabel's] intention in making the $40,000 in payments was to make a gift to defendant in the total amount of $40,000 and not to make any gift to plaintiff of any of said sum. . . . Plaintiff was not an object of [Aunt Mabel's] bounty or gift-giving. He was not the intended recipient of the funds being given. With regard to these checks, plaintiff was merely a conduit for [Aunt Mabel's] gift to defendant.

According to plaintiff, there was no competent evidence in the record to support this finding. Additionally, plaintiff contends that "as a matter of law the aunt's intent is irrelevant given that the aunt *had* to have been making a gift to [plaintiff] in order to comply with federal gift tax law."

In *Hunt v. Hunt*, 85 N.C. App. 484, 355 S.E.2d 519 (1987), plaintiff's grandmother wrote separate checks to plaintiff and her husband, the defendant. The trial court held that the checks written to defendant were intended to be gifts to plaintiff only. On appeal, this Court noted that "findings of fact made by the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support them." *Id.* at 488, 355 S.E.2d at 521. The Court then concluded that "[t]he evidence concerning [the grandmother's] intent adequately supports the finding that the checks written to defendant were gifts to plaintiff only." *Id.*

Similarly, the trial court's findings in this case are adequately supported by the record evidence, and these findings justify its conclusions. It is clear that plaintiff was not the object of Aunt Mabel's bounty, but was a mere conduit for the gift to defendant. As such, we overrule this assignment of error. Further, we find plaintiff's federal estate tax argument to be without merit.

III.

[7] Next, plaintiff contends the trial court erred by classifying the interest in his mother's trust as irrevocable rather than revocable. Specifically, the trial court found that his mother's trust was an "irrevocable living trust" valued at approximately $360,000.00, and that plaintiff was a "named beneficiary of ⅓ of the trust corpus remaining, if any remains, at the time of his mother's death."

However, the trial court also found that "[p]laintiff has no present ownership or property interest of value in [his mother's trust]." The trial court did not classify, value or distribute an interest in the trust to the prejudice of plaintiff. Further, it did not consider the trust as a distributional factor. Therefore, whether the trust was revocable or irrevocable is of no consequence to the trial court's order in this case. Any error by the trial court was harmless, and this assignment of error is overruled.

## IV.

[8] Finally, plaintiff contends the trial court erred by failing to award him a greater share of the marital property and a lesser share of the marital debt. In equitable distribution cases, N.C. Gen. Stat. § 50-20(c) provides, in pertinent part:

> (c) There *shall* be an equal division [of the marital property] unless the court determines that an equal division is not equitable. . . . Factors the court shall consider under this subsection are as follows:
>
> > (1) The income, property, and liabilities of each party at the time the division of property is to become effective;
> >
> > . . . .
> >
> > (3) The duration of the marriage and the age and physical and mental health of both parties;
> >
> > . . . .
> >
> > (5) The expectation of pension, retirement, or other deferred compensation rights that are not marital property;
> >
> > (6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker;
> >
> > (7) Any direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse;
> >
> > . . . .

(9)  The liquid or nonliquid character of all marital property;

. . . .

(11)  The tax consequences to each party;

(11a)  Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert such martial property, during the period after separation of the parties and before the time of distribution; and

(12)  Any other factor which the court finds to be just and proper.

N.C. Gen. Stat. § 50-20(c) (Cum. Supp. 1997) (emphasis added). As the language of the statute suggests, the public policy of this State "so strongly favor[s] the equal division of marital property that an equal division is made *mandatory* 'unless the court determines that an equal division is not equitable.' " *White v. White*, 312 N.C. 770, 776, 324 S.E.2d 829, 832 (1985) (emphasis in original) (quoting N.C. Gen. Stat. § 50-20(c)). Therefore, as the *White* court pointed out:

> The clear intent of the legislature was that a party desiring an unequal division of marital property bear the burden of producing evidence concerning one or more of the twelve factors in the statute and the burden of proving by a preponderance of the evidence that an equal division would not be equitable.

*Id.* Thus, if the party requesting an unequal distribution fails to carry its burden of proving by the preponderance of the evidence that an equal distribution would be inequitable, then the trial court must divide the property equally. *Id.* at 776, 324 S.E.2d at 832-33.

Further, in order for the appellate court to properly review the trial court's conclusions for any abuses of discretion, the trial court is required to make specific findings of fact addressing the statutory factors that are sufficient to support its order. *Armstrong v. Armstrong*, 322 N.C. 396, 405, 368 S.E.2d 595, 600 (1988). Here, the trial court made exhaustive findings of fact, including the following:

a.  . . . Plaintiff has a larger income (double the gross income of defendant), has a vested retirement benefit, and a substantial employee savings plan benefit . . . , while defendant has a large separate property estate;

. . . .

O'BRIEN v. O'BRIEN

[131 N.C. App. 411 (1998)]

c. . . . Defendant does not have a retirement benefit or expectation of one through her employment, independent of what she might save from her professional earnings. Plaintiff has a retirement benefit which will increase in value based upon his post-separation years of employment and earnings. Plaintiff also has an employee savings plan in which he has a continuing expectation of matching contributions for deposit by his employer;

d. . . . Defendant worked and provided homemaking services as a spouse to assist plaintiff in obtaining his engineering degree and in maintaining his employment as an engineer. Plaintiff worked and provided homemaking services as a spouse to assist defendant in obtaining her accounting degree and licensing as a Certified Public Accountant. Plaintiff met with or talked with defendant's investment broker and made suggestions or gave some advice about investment of defendant's separate property investments. However, defendant maintained final control over her separate property investments, and the increase in value of her separate property was due to passive appreciation[.]

After a careful review, we find the trial court did not abuse its discretion in concluding that each party was entitled to an equal share of the marital property. In fact, the findings indicate the trial court admitted and considered evidence relating to most of the twelve factors enumerated under N.C. Gen. Stat. § 50-20(c). We find no abuse of discretion, and overrule this assignment of error.

In conclusion, we find the able trial court made adequate findings of fact which were supported by the record evidence and that these findings support its conclusions of law. Therefore, the order of the trial court is affirmed.

Affirmed.

Judge McGEE concurs.

Judge WYNN concurred in the result prior to 1 October 1998.