DENISE H. BARTON, PLAINTIFF v. JOHN S. BARTON, DEFENDANT

No. COA10-1160

(Filed 6 September 2011)

**1. Divorce—equitable distribution—arbitration award—appreciation in account**

The increase in the balance of a couple's account between marriage and separation was active rather than passive, and the trial court did not err by adopting an arbitration award that found the appreciation to be marital.

**2. Divorce—equitable distribution—marital property—account contribution**

A contribution to an account held to be marital was not separate property, given the account activity that occurred during the marriage.

**3. Divorce—equitable distribution—stock account—tracing contribution**

The Court of Appeals rejected an argument in an equitable distribution case that the contribution of stock to an account could be traced out and would exhaust any marital component of the account.

**4. Divorce—equitable distribution—separate assets—purchase ordered**

An arbitrator did not err in an equitable distribution action by ordering defendant to purchase separate assets from plaintiff where real estate was awarded to defendant as marital property and defendant was ordered to pay plaintiff the value of plaintiff's separate interest.

BARTON v. BARTON

[215 N.C. App. 235 (2011)]

**5. Divorce—equitable distribution—classification of property as marital—no prejudice**

An argument concerning the classification of the appreciation of real estate as marital property was overruled where reclassifying the appreciation would not diminish or increase either party's interest or change the total value conferred on each party.

**6. Divorce—equitable distribution—appreciation of real property**

The arbitrator did not miscalculate the appreciation of real property in an equitable distribution action where defendant contended that the arbitrator incorrectly valued the property at the date of the marriage. The valuation was not the result of an evident miscalculation.

**7. Divorce—equitable distribution—depreciation of car**

The arbitrator in an equitable distribution action did not err by finding that the depreciation in the value of a car was divisible property. The basis for the decrease in value could not be attributed to the actions of one spouse and occurred after the date of separation.

**8. Divorce—equitable distribution—marital property—boat and trailer**

The arbitrator did not err in an equitable distribution action by conferring marital property status upon a boat and trailer that were purchased during the marriage.

**9. Divorce—equitable    distribution—marital    property— 401(k)**

The arbitrator did not err in an equitable distribution action by concluding that defendants 401(k) account retained a marital component. Defendant did not raise a question of law but contested the valuation of the marital property component. He did not argue and the appellate court did not find that the arbitrator committed an evident miscalculation or evident mistake in the description of the property.

**10. Divorce—equitable distribution—arbitrator's finding—no prejudice**

Defendant's contention that an arbitrator erred in an equitable distribution action in the use of a 401(k) plan in the distrib-

ution of assets was not addressed where defendant did not contend that the finding prejudiced him.

## 11. Divorce—equitable distribution—arbitrator's award value of 401(k)—remanded

In an equitable distribution action, the confirmation of an arbitrator's award was remanded where plaintiff conceded that the value of her 401(k) confirmed by the trial court included contributions made after the date of separation, as well as losses occurring after separation.

## 12. Divorce—equitable distribution—marital property—date of valuation

Marital property is to be valued on the date of separation of the parties; in this case, an equitable distribution action was remanded where there was an evident mistake in valuation of a pension plan joint and survivor annuity.

## 13. Divorce—equitable distribution—marital property— retirement plan

The arbitrator did not err in an equitable distribution action in the calculation of the marital portion of an executive retirement plan.

## 14. Divorce—equitable distribution—marital property—IRA

The arbitrator in an equitable distribution case did not err in determining the value of the marital portion of an IRA.

## 15. Divorce—equitable distribution—arbitration award— remanded for modification

While an arbitration decision in an equitable distribution case was remanded for modification, there was no error prejudicing defendant's rights and providing a basis to vacate the order.

Appeal by defendant from order entered 18 May 2010 by Judge Anna Worley in Wake County District Court. Heard in the Court of Appeals 23 February 2011.

*Tharrington Smith, LLP, by Alice C. Stubbs, H. Suzanne Buckley, and Steve Mansbery, for plaintiff-appellee.*

*Smith Debnam Narron Drake Saintsing & Myers, L.L.P., by Max R. Rodden, for defendant-appellant.*

BRYANT, Judge.

John and Denise Barton married on 12 April 1997. Prior to the marriage, Denise (plaintiff) had one minor child whose biological father was deceased. John (defendant) adopted the child. On 4 September 2006, the parties separated. On 28 December 2007, plaintiff filed a complaint seeking equitable distribution, and, defendant filed an amended answer and counterclaims for child custody, equitable distribution, and attorney fees. The parties entered into a Consent Order for Child Custody and Child Support, and, on 17 July 2008, the parties entered into a consent order for arbitration on the remaining issues.

The arbitration was to be conducted pursuant to the Family Law Arbitration Act, N.C. Gen. Stat. § 50-40 *et seq.* The parties preserved their right to appeal errors of law. The arbitration was held beginning 20 November 2008, and by the terms of the consent order, K. Edward Greene was designated as the arbitrator. Both parties were present and represented by counsel; both were permitted to testify, as well as, present exhibits. On 24 April 2009, the arbitrator signed the Arbitration Decision Award. On 28 April 2009, plaintiff filed a motion to confirm the arbitration award in the Wake County District Court. Defendant filed a motion to vacate or modify the award based on what defendant believed to be "evident partiality by the arbitrator" and "evident miscalculation of figures[.]" On 10 May 2010, following a 27 October 2009 hearing on the parties' motions, the District Court denied defendant's motion, confirmed the Arbitration Decision Award, and incorporated it into its order. Defendant appeals.

---

On appeal, defendant argues the trial court erred (I) in adopting the arbitration award and (II) in confirming the arbitration award.

*Standard of Review*

"[T]he Uniform Arbitration Act, which as enacted and codified in our statutory law is virtually a self-contained, self-sufficient code . . . [which] provides controlling limitations upon the authority of our courts to vacate, modify or correct an arbitration award." *Nucor Corp. v. General Bearing Corp.*, 333 N.C. 148, 155, 423 S.E.2d 747, 751 (1992) (citation omitted). "If the parties contract in an arbitration agreement for judicial review of errors of law in the award, the court

shall vacate the award if the arbitrators have committed an error of law prejudicing a party's rights." N.C. Gen. Stat. § 50-54(a)(8) (2009). "[T]he court shall modify or correct the award where . . . (1) [t]here is an evident miscalculation of figures or an evident mistake in the description of a person, thing, or property referred to in the award . . . ." N.C. Gen. Stat. § 50-55(a)(1) (2009).

> If an arbitrator makes a mistake, either as to law or fact unless it is an evident mistake in the description of any person, thing or property referred to in the award . . . it is the misfortune of the party. . . . There is no right of appeal and the Court has no power to revise the decisions of judges who are of the parties' own choosing. An award is intended to settle the matter in controversy, and thus save the expense of litigation.

*Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224, 236, 321 S.E.2d 872, 880 (1984) (discussing N.C. Gen. Stat. § 1-567.14 (1983)).

> If a mistake be a sufficient ground for setting aside an award, it opens the door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party. Thus . . . arbitration instead of ending would tend to increase litigation.

*Semon v. Semon*, 161 N.C. App. 137, 142, 587 S.E.2d 460, 464 (2003) (discussing N.C. Gen. Stat. § 50-55) (citing *Cyclone Roofing Co.*, 312 N.C. at 236, 321 S.E.2d at 880). "On appeal of a trial court's decision confirming an arbitration award, we accept the trial court's findings of fact that are not clearly erroneous and review its conclusions of law de novo." *First Union Secs., Inc. v. Lorelli*, 168 N.C. App. 398, 400, 607 S.E.2d 674, 676 (2005) (citation omitted).

*I*

[1] Defendant contends the trial court erred in adopting the arbitration award. Specifically, he contests the "marital property" status conferred upon the following pieces of property: (A) the appreciation in Scott & Stringfellow account #1110; (B) the calculation of the amount of appreciation in Scott & Stringfellow account #1110; (C) the existence of any marital component in Scott & Stringfellow account #1110; (D) the ordered distribution of separate property; (E) the appreciation in value of Lot 8; (F) Countryview Road property; (G) the post-separation diminution in value of a Volvo; (H) a boat and trailer; (I) defendant's 401(k); (J) post-separation withdrawals from defendant's 401(k); (K) plaintiff's Prudential 401(k); (L) defendant's

McClatchy pension plan; (M) defendant's News and Observer supplemental executive retirement plan; and (N) the SECU IRA #3966.

In equitable distribution matters, property is classified as marital or separate depending upon the proof presented as to of the nature of the assets. *Ciobanu v. Ciobanu*, 104 N.C. App. 461, 465, 409 S.E.2d 749, 751 (1991). "[T]he court shall determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties . . . ." N.C. Gen. Stat. § 50-20(a) (2009).

Marital property is defined under North Carolina General Statutes, section 50-20(b)(1), in part, as follows:

> [A]ll real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property or divisible property . . . .
> It is presumed that all property acquired after the date of marriage and before the date of separation is marital property except property which is separate property . . . .

N.C. Gen. Stat § 50-20(b)(1) (2009). "[M]arital property shall be valued as of the date of the separation of the parties . . . ." N.C. Gen. Stat. § 50-21(b) (2009). "Separate property" is defined, in short, as follows:

> [A]ll real and personal property acquired by a spouse before marriage . . . . The increase in value of separate property and the income derived from separate property shall be considered separate property.

N.C.G.S. § 50-20(b)(2) (2009).

### A. Appreciation in the Scott & Stringfellow account #1110 as marital property.

Defendant argues that the arbitrator erred in conferring the status of marital property upon a $201,937.00 increase in the balance of Scott & Stringfellow account #1110. He contends that prior to the date of separation neither he nor plaintiff took any action which amounted to "substantial activity." Thus, the balance increase, which occurred between the date of marriage and the date of separation, was the result of passive rather than active appreciation. We disagree.

> Generally, property "acquired" by a party before marriage remains that party's separate property, and increases in value to such separate property are "acquired" by that separate estate but

"only to the extent that the increases were passive . . . ." Increases in value to separate property attributable to the financial, managerial, and other contributions of the marital estate are "acquired" by the marital estate.

*Ciobanu,* 104 N.C. App. at 464-65, 409 S.E.2d at 751 (internal citations omitted).

On appeal, defendant cites *O'Brien v. O'Brien,* 131 N.C. App. 411, 508 S.E.2d 300 (1998), where this Court upheld a trial court's determination that despite meetings between both spouses and the wife's broker, during which the spouses routinely chose between investment alternatives based on the broker's recommendation, such action did not elevate the status of the appreciation in the account from "purely passive" appreciation to "active appreciation" achieved by "substantial activity." *Id.* at 419-20, 421, 508 S.E.2d at 306, 307.

At the arbitration hearing, defendant testified that he met with his broker every month or two and that he authorized every trade. Further, defendant's evidence reflects frequent trading activity in account #1110 during the time of marriage and prior to the date of separation. While defendant presents *O'Brien* as compelling the conclusion that his involvement in trading the assets within account #1110 did not amount to substantial activity as a matter of law, such is not the case. The *O'Brien* Court reviewed the trial court order for abuse of discretion and held that, on the issue of active versus passive appreciation, competent evidence supported the trial court's findings of fact and the findings supported the trial court's conclusion of law.

The arbitrator in the instant case concluded that the appreciation in account #1110, after the date of marriage and prior to the date of separation, was property acquired by the marital estate. There was no evident miscalculation or mistake in the description of the $201,937.00 balance increase in Scott & Stringfellow account #1110. Defendant's argument is overruled.

### B. The calculation of the appreciation of account #1110

[2] Defendant contends that the arbitrator erred in concluding that the $201,937.00 balance increase in Scott & Stringfellow account #1110 contained no separate property component. Defendant contends that a $95,546.89 contribution to the account was comprised of funds acquired prior to the marriage and was, thus, separate property. We disagree.

While defendant cites no authority, his argument proposes what is referred to as the source of funds rule: " 'each party retain[s] as separate property the amount he or she contributed . . ., plus the increase on that investment due to passive appreciation.' " *McLean v. McLean*, 323 N.C. 543, 546, 374 S.E.2d 376, 378 (1988) (quoting *McLeod v. McLeod*, 74 N.C. App. 144, 154, 327 S.E.2d 910, 916 (1985)). However, this Court has held that where "[the] defendant failed to rebut the presumption under N.C. Gen. Stat. § 50-20(b)(1) that the funds in the account as of the date of separation were marital . . . the trial court properly classified the entire account balance as marital property." *Stovall v. Stovall*, ___ N.C. App. ___, ___, 698 S.E.2d 680, 688 (2010).

Defendant's records reflect $95,546.89 in contributions to Scott & Stringfellow account #1110 during the first quarter of 2003, during the time of marriage. [Def. Exhibit 42]. Defendant testified that the funds originated from a brokerage account opened prior to the date of marriage at Wheat First Securities. Defendant's records show two accounts at Wheat First Securities—account 4695 and account 4717—that were merged during the marriage. Prior to the balance transfer of the surviving account, account 4695, to Scott & Stringfellow account #1110 during 2003, defendant's records reflect several transfers within account 4695 during the course of the marriage. As in subpart A, given the activity within the Wheat First account, as well as the trading activity that occurred within Scott & Stringfellow account #1110 subsequent to the transfer of the Wheat First balance there was no evident mistake in the arbitrator's failure to classify the $95,546.89 rollover from Wheat First as separate property. *See Ciobanu*, 104 N.C. App. at 465, 409 S.E.2d at 751 ("Increases in value to separate property attributable to the financial, managerial, and other contributions of the marital estate are 'acquired' by the marital estate."). Therefore, there was no evident miscalculation in including the $95,546.89 contribution to Scott and Stringfellow account #1110 or mistake in the description of the $201,937.00 appreciation in account #1110 as marital property. Defendant's argument is overruled.

  *C. The existence of any marital component in Scott & Stringfellow account #1110*

[3] Defendant contends that any contribution of marital property to Scott & Stringfellow account #1110 can be traced out, exhausting any marital competent. Specifically, defendant contends that 682 shares

of stock in McClatchy Newspapers, Inc. was marital property received for his employment during the marriage, and these funds were traced into Scott & Stringfellow account #1110 and completely traced out.

For the reasons stated in subparts A and B supra, we overrule this contention.

### D. Distribution of separate property

[4] Defendant argues that the arbitrator erred in ordering him "to purchase separate assets from [plaintiff]" for a total of $145,000.00. Defendant contends that the arbitrator failed to credit him with providing "all the consideration amounting to $291,212.00 for Lots 7 and 8" from his separate funds. We disagree.

"Our courts have adopted a source of funds approach to distinguish marital and separate contributions to a single asset. Under the source of funds approach, each party retains as separate property the amount he contributed to purchase the property plus passive appreciation in value." *McLean v. McLean*, 88 N.C. App. 285, 288-89, 363 S.E.2d 95, 98 (1987) (citing *Wade v. Wade*, 72 N.C. App. 372, 325 S.E. 2d 260 (1985)).

In *Wade*, this Court reviewed an equitable distribution order in which it was confronted with the question of whether a court could award one spouse's separate property to the opposing party. *Wade*, 72 N.C. App. at 382, 325 S.E.2d at 270. The parties' house had been constructed after the date of marriage on land purchased by the plaintiff prior to the marriage. *Id.* at 378, 325 S.E.2d at 267. The Court reasoned that though the house was marital property and the land was plaintiff's separate property, they represented one asset. *Id.* at 377, 325 S.E.2d at 267. And, because of the presence of the marital property component, the trial court had the authority to include that asset in the distribution of assets. *Id.* at 382, 325 S.E.2d at 270.

> If it is necessary in order to achieve an equitable distribution of the marital property that the court award that part of the [plaintiff's] asset which is separate in character to defendant, then we believe the court has it within its power in equity to do so to the extent necessary so long as plaintiff is reimbursed or given credit for the value of his separate property contribution. That part of the asset which is separate in character should be returned in kind to the person contributing it so far as it is practical, but if it is not practical or equitable to do so, then the court must be per-

mitted to take whatever measures are necessary in distributing the property to achieve equity between the parties.

*Id.* at 382-83, 325 S.E.2d at 270.

Here, the arbitrator ordered that defendant pay plaintiff $126,000.00 and $19,000.00—a total of $145,000.00—for plaintiff's separate portion of the properties located at 6909 Landingham Drive (Lot 7) and 6913 Landingham Drive (Lot 8), respectively. The uncontested findings of fact state that defendant purchased Lot 7 prior to the date of marriage and titled it in the names of himself and plaintiff as joint tenants with right of survivorship. On the date of marriage, Lot 7 was valued at $252,000.00. The arbitrator reasoned that in titling the property in the names of both parties, defendant made a gift to plaintiff of one-half of the property value; therefore, on the date of marriage, plaintiff's separate property interest in Lot 7 was valued at $126,000.00.

Lot 8 was also purchased by defendant prior to the date of marriage and titled in the names of both parties as tenants in common. On the date of marriage, Lot 8 was valued at $38,000.00. Under the same rationale applied to Lot 7, plaintiff's separate property interest in Lot 8 was valued at $19,000.00.

On the date of separation, the value of Lot 7 had increased to $320,000.00; Lot 8 had increased to $52,500.00. The arbitrator awarded Lot 7 and Lot 8 to defendant as marital property. However, defendant was ordered to pay plaintiff $126,000.00—representing the value of plaintiff's separate interest in Lot 7, and $19,000.00—representing the value of her separate interest in Lot 8.

Defendant does not contest the arbitrator's conclusion that titling the properties in both his and plaintiff's names prior to the date of marriage represented a gift to plaintiff of one-half of the property interest. And, as Lot 7 and Lot 8 each contained a marital property component on the date of separation, the arbitrator had authority to distribute the properties in the award. *See id.* at 382, 325 S.E.2d at 270. The arbitrator had the power to distribute the property to defendant, including plaintiff's separate property component, so long as plaintiff was reimbursed for the value of her separate property interest. *See id.* at 382-83, 325 S.E.2d at 270. Therefore, there was no evident miscalculation or mistake in the description of the property conferred. Defendant's argument is overruled.

## E. The appreciation in value of Lot 8

[5] Defendant argues that the arbitrator erred in conferring the status of marital property upon the appreciation of Lot 8. Defendant contends that Lot 8 was purchased prior to the marriage, that no improvements were made to the property, and that "[n]o evidence was presented of any marital contributions, monetary or otherwise, to account for the appreciation of each party's one half interest . . . ."

Presuming the accuracy of the argument, defendant does not indicate how he has been prejudiced. The trial court's order credits both parties with a separate property interest equal to one-half of the value of Lot 8 as of the date of marriage and labels as marital property the appreciation in Lot 8 which occurred during the marriage prior to the date of separation. Defendant was awarded Lot 8 and ordered to pay plaintiff for her separate property interest as well as a distributive award "to equalize the division of marital . . . assets . . . ." Reclassifying the appreciation of Lot 8 from marital to separate property would not diminish or increase either parties' individual one-half interest in the property and would not change the total value conferred each party pursuant to the trial court order. Therefore, we overrule this argument.

## F. The marital component of the Countryview Road property

[6] Defendant argues that the arbitrator erred in calculating the appreciation of the marital component of the property located at 6016 Countryview Road. Specifically, defendant contends that the arbitrator incorrectly calculated the fair market value of the Countryview property as of the date of marriage. We disagree.

"In an equitable distribution proceeding, the trial court is to determine the net fair market value of the property based on the evidence offered by the parties. There is no single best method for assessing that value, but the approach utilized must be 'sound[.]' " *Walter v. Walter*, 149 N.C. App. 723, 733, 561 S.E.2d 571, 577 (2002) (internal citations omitted).

Defendant testified that in August 1996, prior to his marriage, he purchased the property located at 6016 Countryview Road for $58,500.00. Also, prior to his marriage, he invested $6,500.00 in the property and bought out the interest of two partners who helped him refurbish the residence for $10,000.00, bringing his cost for the property to $75,000.00. The arbitrator found the value of the property, as of the date of marriage, to be $75,000.00. This valuation is not the

**BARTON v. BARTON**

[215 N.C. App. 235 (2011)]

result of an evident miscalculation; therefore, defendant's argument is overruled. *See* N.C.G.S. § 50-55(a)(1); *see also, e.g., Semon,* 161 N.C. App. 137, 587 S.E.2d 460 (overruling the appellant's argument where he merely argued that the arbitrator should have used a different methodology in valuing the marital property).

*G. The diminution of value of the Volvo*

[7] Defendant argues that the arbitrator erred in finding that the depreciation in the value of a Volvo was divisible property. Plaintiff retained possession of the vehicle after the date of separation, and, after the parties separated, the vehicle was operated for an additional 40,000 miles. Defendant contends that the $13,000.00 post-separation decrease in the value of the vehicle was not divisible property. We disagree.

> "Divisible property" means . . . [a]ll appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution, except that appreciation or diminution in value which is the result of postseparation actions or activities of a spouse shall not be treated as divisible property.

N.C.G.S. § 50-20(b)(4). "Upon application of a party, the court shall determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties in accordance with the provisions of this section." N.C.G.S. § 50-20(a).

The arbitrator found that on the date of separation, the value of the vehicle was $21,000.00. Defendant testified that after the date of separation, he drove the vehicle and had accidents that, on two occasions, resulted in "minimal damage." The bumper sustained scrapes and the side of the vehicle a dent. At the time of the arbitration hearing, the car had not been repaired. The arbitrator made the uncontested finding that the post-separation decrease in the value of the vehicle was $13,000.00. Because the basis for the Volvo's decrease in value cannot be attributed to the actions of one spouse and occurred after the date of separation, the arbitrator's finding that the diminution in value is properly within the definition of divisible property is not an evident miscalculation or mistake in the description. *See* N.C.G.S. §§ 50-20(b)(4), 50-55. Defendant's argument is overruled.

*H. Determination that the boat and trailer were marital property*

**[8]** Defendant argues that the arbitrator erred in conferring marital property status upon a boat and trailer that were purchased during the marriage. Defendant contends that he withdrew $20,000.00 from Scott & Stringfellow account #1110 for the purchase, and, because account #1110 is his separate property, the boat and trailer remain his separate property.

Because of our holdings in subparts A and B above, we overrule defendant's argument.

*I. Defendant's McClatchy 401(k) plan had a marital component of $55,500.00*

**[9]** Defendant argues that the arbitrator erred in concluding that his account in the McClatchy Company News and Observer Publishing Company Money Shelter 401(k) Plan retained a $55,500.00 marital component. Defendant contends that his 401(k) plan was not actively managed; therefore, any increase in value which occurred during the marriage was due to passive appreciation. On this basis, defendant contends that his McClatchy Company 401(k) plan is his separate property. We disagree.

Defendant provided exhibits and testimony in support of his contention that $39,681.57 in marital contributions had been made to the McClatchy Company 401(k) plan. Therefore, defendant's 401(k) plan account contained a marital property component. Defendant determined that the marital property component of the 401(k) account was worth $19,301.52 on the date of separation and $13,169.02 at the time of that arbitration hearing. However, these figures do not reflect a decline in the value of the investments due solely to market forces. Indeed the 401(k) account appreciated $113,043.22 between the date of marriage and the date of the arbitration hearing. Prior to the date of separation, defendant elected to take early retirement withdrawals from his 401(k) account. The early retirement withdrawals made prior to the parties separation amounted to $42,196.04 but, according to defendant's calculations, reduced only the marital component of the 401(k) account. His records indicate that in the quarter prior to the first early retirement withdrawal, the balance of the marital property component was $55,308.89. The arbitrator determined that on the date of separation, the value of the marital property component of the McClatchy Company 401(k) plan was $55,500.00.

Having established that defendant's McClatchy Company 401(k) plan contained a marital property component upon the date of separation, defendant does not raise a question of law but contests the valuation of the marital property component. As he does not argue and we do not find that the arbitrator committed an evident miscalculation or evident mistake in the description of the property, defendant's argument is overruled.

### J. Postseparation withdrawals from the McClatchy 401K

[10] Defendant argues that the arbitrator erred in using the rollover of defendant's McClatchy Company 401(k) plan to two individual retirement accounts (IRAs) held by Scott & Stringfellow as a factor to favor plaintiff in the distribution of assets. However, defendant does not contend how this finding prejudiced him, and we do not address it further.

### K. Plaintiff's Prudential 401(k) and related debt

[11] Defendant argues that the arbitrator erred in his determination that plaintiff's account in the North Carolina State Employee's 401(k) plan was valued at $58,524.00 on the date of separation. Defendant contends that the marital component of the account was valued at $87,523.38 on the date of separation. We agree.

Marital property is to be valued as of the date of the separation of the parties. N.C.G.S. § 50-21(b). At the arbitration hearing, plaintiff testified that she began making contributions to the account during the marriage, thus making all contributions made prior to the date of separation marital property. The arbitrator found that on the date of separation, 4 September 2006, the marital component of plaintiff's 401(k) account was valued at $58,524.00. However, according to plaintiff's records, on 4 September 2006, her account balance in the State of North Carolina 401(k) Plan was $87,523.38. No evidence of separate property was presented. The arbitrator awarded plaintiff the balance of the 401(k) plan, $58,524.00. On appeal, plaintiff concedes that the figure the trial court confirmed as plaintiff's 401(k) account balance on the date of separation included plaintiff's contributions made after the date of separation, as well as, losses in the account occurring after the date of separation. Given that the trial court ordered defendant to pay plaintiff a distributive award "to equalize the division of marital and divisible assets and debts[,]" we remand this matter for modification of the award of the marital and separate property components of plaintiff's Prudential 401(k) plan as well as

the distributive award payable to plaintiff in a manner consistent with this opinion.

### L. Date of separation value of defendant's McClatchy Company Pension Plan

**[12]** Defendant argues that the arbitrator erred in finding that the value of the joint life portion of defendant's McClatchy Company Pension Plan account on the date of separation was $20,648.00 and erred in assigning no value to the 100% survivor portion of the account. Defendant contends that on the date of separation, the joint life portion of the account was valued at $18,039.00 and the 100% survivor portion valued at $5,589.00. We agree in part.

Marital property is to be valued as of the date of the separation of the parties. N.C.G.S. § 50-21(b). Plaintiff and defendant separated on 4 September 2006. The Arbitration Decision Award confirmed and incorporated by the trial court in its order states that defendant's McClatchy Company retirement plan account is marital property with a date of separation value of $20,648.00. The record reflects that a $20,648.00 lump sum value of defendant's joint and survivor annuity through the McClatchy Pension Plan corresponds to a benefit valued as of 1 July 2005. On the same page of the record, the lump sum annuity benefit valued as of 4 September 2006, the date of separation, is listed as $18,039.00. There is no other evidence in the record of a different account valuation as of the date of separation. The finding that the lump sum value of defendant's McClatchy Pension Plan joint and survivor annuity on the date of separation was $20,648.00 rather than $18,039.00 is an evident mistake. Therefore, we reverse and remand the matter for modification of the trial court's order to reflect a lump sum annuity benefit valued as of 4 September 2006, the date of separation, in the amount of $18,039.00. See N.C. Gen. Stat. § 50-55(a)(1). Because the arbitration award as confirmed by the trial court's order compels defendant to retain plaintiff as the beneficiary of the pension plan, we do not otherwise consider the valuation of the survivor annuity benefit.

### M. The marital component of defendant's News and Observer supplemental executive retirement plan

**[13]** Defendant argues that the arbitrator erred in finding that thirty percent of defendant's News and Observer Supplemental Executive Retirement Plan account was marital property. Defendant contends that the fraction used to determine the marital portion of the Executive Retirement Plan account was not in accordance with the

directive as set out in N.C. Gen. Stat. § 50-20.1(d). Defendant asserts that the denominator of the fraction should reflect the duration of defendant's employment with the News and Observer from 1977 through 2000, rather than only the time defendant participated in the plan from 1989 through 2000. We disagree.

Under North Carolina General Statutes, section 50-20.1, "[t]he award of vested pension, retirement, or other deferred compensation benefits may be made payable . . . (2) [o]ver a period of time in fixed amounts by agreement . . . ." N.C. Gen. Stat. § 50-20.1(a)(2) (2009). "The award shall be determined using the proportion of time the marriage existed (up to the date of separation of the parties), simultaneously with the employment which earned the vested and nonvested pension, retirement, or deferred compensation benefit, to the total amount of time of employment." N.C. Gen. Stat. § 50-20.1(d) (2009). "This section . . . shall apply to all pension, retirement, and other deferred compensation plans and funds . . . ." N.C.G.S. § 50-20.1(h). Known as the "fixed percentage method," the Court has interpreted the description of the denominator in section 50-20.1(d) as "being the total amount of time the employee spouse is employed in the job which earned the vested pension or retirement rights." *Gagnon v. Gagnon*, 149 N.C. App. 194, 198, 560 S.E.2d 229, 231 (2002) (citation and internal quotations omitted).

Defendant began working for the McClatchy Company on 2 May 1977. Defendant testified that on 15 December 1989, he was admitted to participate in the News and Observer Supplemental Executive Retirement Plan, a non-qualified retirement plan funded entirely by the News and Observer. The plan had no formal service requirement for plan entry. Defendant testified that he believed his entry into the plan was intended as "golden handcuffs," "granted to [defendant] to retain [him] as an employee at the News & Observer." The arbitrator determined that the award was to be premised upon the time the marriage existed (simultaneous with the employment that earned the benefit)—34 months, as compared to the amount of time defendant participated in the retirement plan (from 15 December 1989 until 26 February 2000)—123 months. Acknowledging that this is a non-qualified plan with no formal service requirement or qualification for plan entry and participation is conferred on a case-by-case basis, the arbitrator's determination that the amount of time defendant participated in the News and Observer Supplemental Executive Retirement Plan equals the total amount of time defendant earned the benefit conferred upon him by the plan—123 months is not an evident mistake. N.C.G.S. § 50-55(a)(1). Therefore, defendant's argument is overruled.

*N. The marital component of SECU IRA*

**[14]** Defendant argues that the arbitrator erred by finding that the value of the Individual Retirement Account (IRA) held. in State Employees' Credit Union (SECU) account #3966 on the date of separation was $6,525.00. Defendant contends that, like the valuation of the McCatchy Pension Plan discussed in subpart L supra, the arbitrator evidently selected an account value other than the value on the date of separation. However, here, it is not evident that the value reflected for account #3966 at the date of separation was a mistake.

Defendant testified that he participated in a defined benefit plan that was valued as a lump sum and rolled over to an IRA held by the SECU in account #3966. The amount rolled into the IRA was $109,425.00. Defendant testified that most of the property was separate. However, he worked for eight-and-a-half months during his marriage to accrue benefits under the defined benefit plan; therefore, the account balance rolled into account #3966 contained some component of marital property. Defendant testified that the amount of his required minimum distribution, calculated from the balances of two IRAs and a 401(k) plan, was deducted entirely from SECU account #3966. Defendant's evidence details both the calculation of the required minimum distribution as well as the deduction from the SECU account and indicates that on 30 June 2005 the balance of account #3966 was $109,425.08. Following the separation of the parties on 4 September 2006, account #3966 was valued at $55,461.84. Defendant testified that the account was "totally deleted" at the time of the arbitration hearing, but, on 1 July 2005, the marital component of the account was $6,525.00. The arbitrator's determination that defendant's required minimum distribution did not reduce the marital property component of account #3966, valued at $6,525.00, was not an evident mistake. N.C.G.S. § 50-55(a)(1). Therefore, defendant's argument is overruled.

*II*

**[15]** Defendant argues that the trial court erred in adopting the arbitration decision award because of the aforementioned asserted errors. However, while we reverse and remand this matter to the Wake County District Court for modification of two portions of the court's order, defendant does not argue nor do we find that the arbitrator or the trial court committed an error of law prejudicing defendant's rights, providing a basis to vacate the order. *See* N.C.G.S. 50-54(a)(8). Therefore, we overrule defendant's argument.

Affirmed in part; reversed in part; and remanded.

Judges ELMORE and GEER concur.