DONALD R. PAYNE, RICHARD C. HILL, JR., J. HAROLD KING, GRADY C. BECK, MELVIN DOUGLAS PEED AND WIFE, MARY ROSE BROWN PEED, AS TENANTS BY THE ENTIRETY, GEORGE W. ODELL, III, MORRIS A. HERRON AND WIFE, SARAH H. HERRON, AS TENANTS BY THE ENTIRETY, AND RONNY G. ODELL AND WIFE, KATHLEEN W. ODELL, AS TENANTS BY THE ENTIRETY v. BUFFALO REINSURANCE COMPANY

No. 8322SC286

(Filed 3 July 1984)

**Insurance § 135.1— fire insurance—payment to mortgagee—subrogation or assignment—election**

Where defendant, pursuant to an insurance contract between the parties, refused to pay mortgagor-owner plaintiffs any part of the fire loss claimed but did pay the seller-mortgagee the mortgage balance and received an assignment of a note and deed of trust executed by plaintiffs at the time of purchase,

plaintiffs subsequently sued defendant claiming the policy limits were due them because of the fire in their building, defendant alleged that because of the payments it had made under the policy it was subrogated to the seller-mortgagee in the amount of the mortgage balance and counterclaimed for that amount, summary judgment was entered against plaintiffs on their claim and against defendant on its counterclaim, and neither party appealed therefrom, the trial court properly concluded that defendant made a binding election by counterclaiming as a subrogee in the prior action and ordered the deed of trust and assignment cancelled, since the insurance policy provided that defendant was at liberty to proceed against plaintiffs *either* as a subrogee of the mortgage *or* as an assignee of the mortgage, but it could not do both.

APPEAL by defendant from *Collier, Judge.* Judgment entered 22 December 1982 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 10 February 1984.

Plaintiffs, owners of a factory building and the land it is situated on, sued to remove as a cloud on their title a deed of trust that defendant holds as an assignee of plaintiffs' mortgagee. In buying the property in 1978 plaintiffs gave a note and deed of trust to the seller in the amount of $391,500. Soon thereafter, they and their tenant, a manufacturer of polyfoam for the furniture industry, purchased a fire policy from defendant insuring the factory building for $1,000,000 and the contents for $500,000. The policy contains a mortgage clause, more or less standard in the industry, which states that the mortgagees' interests under the policy cannot be invalidated by improper or negligent acts of the insureds. With respect to the possible forfeiture of the insureds' right to the policy proceeds, the clause further provides:

IF THIS COMPANY SHALL CLAIM THAT NO LIABILITY EXISTED AS TO THE MORTGAGOR OR OWNER, IT SHALL TO THE EXTENT OF PAYMENT OF LOSS TO THE MORTGAGEE BE SUBROGATED TO ALL THE MORTGAGEE'S RIGHTS OF RECOVERY BUT WITHOUT IMPAIRING MORTGAGEE'S RIGHT TO SUE; OR IT MAY PAY OFF THE MORTGAGE DEBT AND REQUIRE AN ASSIGNMENT THEREOF AND OF THE MORTGAGE.

In April, 1980 when a fire destroyed the insured building, defendant claimed it was not liable to the mortgagor-owner plaintiffs because of various acts on their part and refused to pay them any part of the loss claimed. On July 31, 1980 it did pay the seller-mortgagee the mortgage balance of $378,893.67, however, and received an assignment of the note and deed of trust, which were recorded on January 8, 1981. On January 13, 1981 plaintiffs sued

defendant, claiming the policy limits of $1,000,000 were due them because of the fire. In the answer, after asserting several defenses based on technical grounds, as well as misdeeds by plaintiffs or their agents, defendants alleged that because of the payments it had made under the policy it was subrogated to the seller-mortgagee in the amount of $378,893.67 and counterclaimed against plaintiffs for that amount. In February, 1982 summary judgment was entered against plaintiffs on their claim and against defendant on its counterclaim, and neither party appealed therefrom.

In October, 1982 this action was filed to cancel the deed of trust which defendant still holds as assignee of the seller-mortgagee. Jury trial was waived. After a hearing, Judge Collier found and concluded that defendant made a binding election by counterclaiming as a subrogee in the prior action, and ordered the deed of trust and assignment cancelled.

*White and Crumpler, by William E. West, Jr., for plaintiff appellees.*

*Tuggle, Duggins, Meacham, Thornton & Elrod, by Joseph F. Brotherton, for defendant appellant.*

PHILLIPS, Judge.

Only one legal question is raised by this appeal—Was the judgment cancelling defendant's deed of trust of record authorized by law? It was, in our opinion, and the judgment of the trial court is affirmed.

The judgment was authorized by the express terms of the contract between the parties. An insurance policy is but a special kind of contract and the terms agreed to therein, unless forbidden by law, are binding on insurer and insured alike. No statute or other law of this state prohibits an insurance company from agreeing to pursue only one of two courses against an insured mortgagor when payment has been made to the mortgagee and it is claimed that the policy rights of the owner-mortgagor have been forfeited. But to the contrary; our General Assembly by enacting G.S. 58-176, which established the "Standard Fire Insurance Policy for North Carolina," required that just such a provision be put in every fire insurance policy written in this state.

In doing so the legislative purpose, no doubt, was to prevent insurance companies from taking more than one legal course against insured mortgagors in situations like this, relieve insured mortgagors from the necessity of dealing with more than one proceeding, claim or position, and expedite the conclusion of controversies involving alleged misconduct by insured mortgagors. The terms selected by the Legislature to effectuate these purposes are clear; if they were not, the ambiguities would, of course, have to be construed against the insurer under fundamental principles of law. But the terms are not ambiguous; the disjunctive "or" is not a synonym for the subjunctive "and," and the meaning of the terms approved by the Legislature and used by the defendant company cannot be mistaken. What they mean and say is that upon paying policy proceeds to the mortgagee, rather than the mortgagor insureds, and claiming that their interests had been forfeited, the company was at liberty, as it saw fit, to proceed against the plaintiffs *either* as a subrogee of the mortgage *or* as an assignee of the mortgage; but it could not do both. That, under the facts of this case, the remedies of subrogation and assignment may not be contradictory or repugnant to each other, as defendant argues, is beside the point. It is enough that they are different and distinctive rights and remedies and the policy limited defendant to exercising only one of them. Subrogation is an equitable remedy in which one steps into the place of another and takes over the right to claim monetary damages to the extent that the other could have, 73 Am. Jur. 2d *Subrogation* § 1 (1974); whereas, an assignment is the formal transfer of property or property rights, 6 Am. Jur. 2d *Assignments* §§ 1, 3 (1963). The property or property right transferred by the assignment in this case was a recorded deed of trust containing foreclosure powers on plaintiffs' real property, which, of course, is distinguishable from the rights defendant acquired by subrogation. Since the rights and remedies are quite different, and defendant actively and formally pursued its subrogation rights in the previous litigation between the parties by seeking to obtain a money judgment on that ground, and chose not to assert its rights under the mortgage, those rights cannot be successfully asserted now in this action. They have been abandoned under the terms of the policy, as Judge Collier ruled.

We emphasize that the binding election that defendant made was under the terms of the contract, rather than under the law of

election of remedies, which has no application to this case, in our opinion. We do this because the briefs indicate that the parties are under the impression that in entering judgment the judge did so in accord with his understanding of the law of election of remedies. The judgment does not so state, but rather declares that "defendant made an election of remedies available to it under said insurance policy." In all events, for there to be an election of remedies under the law of that subject, "the two remedies must be inconsistent with each other, and not analogous, consistent, and concurrent." 28 C.J.S. *Election of Remedies* § 13, pp. 1086-1087 (1941); whereas in this case, so far as we can see, the rights of subrogation and assignment were neither contradictory nor incompatible with each other. But even if the judgment had been mistakenly entered under the law of election of remedies, our decision on this appeal would not be affected, since the judgment is valid under the law of contracts, and it is common learning that a judgment that is correct must be upheld even if it was entered for the wrong reason. 5 Am. Jur. 2d *Appeal and Error* § 785 (1962).

Since the judgment is affirmable on the grounds stated, plaintiffs' contention that it was also authorized by the doctrine of *res judicata*, though interestingly presented, need not be determined.

Affirmed.

Judges WELLS and BRASWELL concur.