IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-581

Filed 15 April 2026

Caldwell County, No. 19CVD001553-130

GARY BIDDLE, Plaintiff,

v.

SUVI HANNELE BIDDLE, Defendant.

Appeal by defendant from order entered 6 December 2024 by Judge Sherri W. Elliott in District Court, Caldwell County. Heard in the Court of Appeals 18 November 2025.

> *LeCroy Law Firm, PLLC, by M. Alan LeCroy, for plaintiff-appellee.*
>
> *Poyner Spruill LLP, by Steven B. Epstein, for defendant-appellant.*

STROUD, Judge.

Suvi Hannele Biddle, Defendant, appeals from the trial court's equitable distribution order. She contends the trial court erred in the classification and valuation of certain marital assets. She also argues that the trial court did not comply with the parties' binding stipulations and that it erred by placing the burden of proof on her to show that gains in Plaintiff Gary Biddle's separate assets during the marriage should be classified as marital property. For the reasons below, we affirm in part, vacate in part, and remand for entry of a new order.

## I. Background

Gary Biddle (Husband) and Suvi Biddle (Wife) married 23 March 2011 and separated 16 November 2019.  In his complaint, Husband sought an equitable distribution of the marital estate and a divorce from bed and board.  On 12 September 2023, the parties entered into a Pretrial Order.  A series of schedules containing extensive stipulations were attached to the Pretrial Order.  These stipulations: (1) stated how the parties' property would be classified, valued, and distributed; and (2) set out the precise issues the court would decide with each respective schedule.

Schedule C of the Pretrial Order contained "a list of marital property upon which there [wa]s [a]greement as to [v]alue and [d]isagreement as to [d]istribution."  Included in this schedule was item A-1, the former marital home, with an agreed-upon value of $1,100,000.  Schedule C also included item L-1, the Monroe Medical stock, with an agreed-upon value of approximately $877,000.

Schedule D contained a "list of marital property upon which there is [d]isagreement as to [d]istribution and [d]isagreement as to [v]alue."  Schedule D included a townhome that the parties owned in South Carolina.

Schedule E listed numerous accounts with which there was "[d]isagreement as to [w]hether the item is [m]arital [p]roperty."  Included in this schedule were three Charles Schwab investment accounts—Schwab #8193, Schwab #8773, and Schwab #0407 (investment accounts)—which Husband owned prior to the marriage.

Schedule G contained "a list of items with [m]ixed, [m]arital and [s]eparate [c]haracteristics."  Such item was a Wells Fargo Biddle's Custom Homes Checking

Account (Wells Fargo Checking Account), which Husband had opened before the marriage. The parties agreed that the Wells Fargo Checking Account's value was $12,465, and Husband contended $5,447 of this amount was marital. Additionally, Schedule G included the Charles Schwab #4691 IRA Rollover Account (Rollover Account). Both parties agreed the Rollover Account's value was approximately $676,562, and Husband contended $255,495.29 of this amount was marital.

In summary, the parties made the following stipulations in the Pretrial Order:

- The parties agreed on the marital home and Monroe Medical stock's classification as marital property and their respective date-of-separation values. They disagreed as to the distribution of both.

- The parties agreed the townhome was marital property but disagreed as to its distribution and value.

- The parties agreed on the date-of-separation values of each of the investment accounts but disagreed as to whether any portion of each account was marital property.

- The parties agreed that some portion of both the Wells Fargo Checking Account and the Rollover Account was marital but disagreed about how much.

The Pretrial Order also included, in Schedule H, Husband's contentions for an unequal distribution. Husband stated that he had purchased the townhome, listed in Schedule D, with his own pre-marital funds for his daughter and grandsons when they "became homeless." Although the townhome was originally titled just to him, Husband asserted "to maintain marital peace," he had added Wife to the deed.

3

Husband also claimed he had made three loans totaling $105,000 to Wife's daughter and did not use any marital money.

On 5 January 2024, Husband filed a document entitled "Plaintiff's Notice of Amendment of his Equitable Distribution Affidavit and The Pretrial Order" (Notice). In the Notice, Husband stated he had obtained a "new current appraisal" of $1,175,000 for the former marital home and a separate "new current appraisal" of $150,000 for the vacant lot across the street from the marital home, which the parties also owned. Husband moved to amend "item A-1 of the Pretrial Order" with the marital home and lot's new total value (collectively, $1,325,000). He also stated he was amending "item L-1 of the Pretrial Order" with a new value for the Monroe Medical Stock ($1,003,663.89).

Wife filed "Defendant-Wife's Response in Opposition to Plaintiff-Husband's 'Notice' of Amendments and Motion in Limine," (motion in limine) in which she opposed the "amendments" to the Pretrial Order. Wife alleged that the Pretrial Order could not be unilaterally "amended" by Husband but, instead, could be amended only upon a proper motion and order under Rule 59 or Rule 60 of the North Carolina Rules of Civil Procedure. *See* N.C. Gen. Stat. § 1A-1, Rule 59 (2025) ("New trials; amendment of judgments); N.C. Gen. Stat. § 1A-1, Rule 60 (2025) ("Relief from judgment or order"). Wife claimed Husband could not add the vacant lot with a separate value from the marital home's value. She moved in limine for the court "to conduct a pre-trial hearing" and, pursuant to Rule 46 of the North Carolina Rules of

Civil Procedure, that the trial court rule "as inadmissible any evidence regarding the divisible v[ersus] marital nature of" the marital home or the vacant lot. *See* N.C. Gen. Stat. § 1A-1, Rule 46 (2025) ("Objections").

The equitable distribution hearing was held on three dates, beginning on 26 January 2024 and concluding on 2 July 2024. On the first day of the hearing, the trial court addressed Husband's Notice and Wife's motion in limine. The court ruled on Wife's motion in limine and denied Husband's request to value the marital home and the lot as two separate parcels because the "parties combined that lot with the house" in 2019. It determined the marital home's value would include all the real property at that location, including the lot. However, the trial court also ruled that it *would* consider the marital home's date-of-distribution value and would address any divisible property based upon the evidence. The court also declared that Husband would be allowed to present evidence of the Monroe Medical stock's value. Based on the trial court's ruling, the parties stipulated to the Monroe Medical stock's date-of-trial value. The court denied Husband's request to present evidence on an outstanding loan and "a 2019 tax refund" because these items were not previously listed.

During the hearing, the parties made certain oral stipulations: Husband and Wife orally stipulated to the townhome's $290,000 value and to the Wells Fargo Checking Account's $5,447 marital portion. Consistent with the court's ruling at the start of the trial, Husband presented evidence from an appraiser, who testified that

the marital home's fair market value was $1,275,000. The parties also put on evidence regarding gains and losses in the investment accounts and the Rollover Account. Husband testified about the frequency with which he traded investments in each investment account. Husband also submitted Exhibit 15, wherein he tried to trace out his separate assets in the Rollover Account.

On 13 December 2024, the trial court entered an equitable distribution order (Order), concluding that an equal distribution was equitable and distributed the parties' property according to its findings. As to the items in Schedule C, the court found that the marital home's value had increased since 2019. "[B]ased on the appraisal report presented," the marital home's date-of-distribution value was $1,275,000. The court also found that the townhouse, listed in Schedule D, was a mixed asset. Of the townhome's $290,000 value, the marital and/or divisible portion was $126,693 and Husband's separate portion was $163,307.

As for the investment accounts listed in Schedule E, the court found: Schwab #8193's date-of-separation value was $24,011 and there had been a $17,409 passive gain during the marriage; Schwab #8773's date-of-separation value was $121,966 and there had been a $13,230.42 passive gain during the marriage; and Schwab #0407's date-of-separation value was $223,353,00 and there had been a $66,206.00 passive gain during the marriage. The court made identical findings as to each investment account: "The [c]ourt fails to find that the simple few trades made on this account by [Husband] during the marriage amounts to 'substantial activity'. These gains

represent passive appreciation and must be declared separate in this order." As to the items in Schedule G, the court found that Wells Fargo Checking Account's $12,465.00 date-of-separation value was Husband's separate property. Finally, the court found that the Rollover Account "contained both separate and marital funds" and that Husband had "produced sufficient evidence requiring th[e c]ourt to trace out and classify" the separate contributions.

Wife appeals.

## II.   Analysis

We begin with some general equitable distribution principles. When a party applies for an equitable distribution, the North Carolina Equitable Distribution Act requires the trial court

> to determine whether the property is marital or divisible and provide for an equitable distribution of the marital property and divisible property between the parties. In accordance with the Act, the trial court is required to follow a three-step analysis: (1) identify the property as either marital, divisible, or separate property after conducting appropriate findings of fact; (2) determine the net value of the marital property as of the date of the separation; and (3) equitably distribute the marital and divisible property. With regard to the distribution phase, there is generally a presumption in favor of equal distribution. However, the trial court may conclude, within its discretion, that unequal distribution is equitable after considering the factors listed in [North Carolina General Statute Section] 50-20(c) and making sufficient findings of fact to support its conclusion.

*Mugno v. Mugno*, 205 N.C. App. 273, 276-77, 695 S.E.2d 495, 498 (2010). Marital

property is defined, in part, as "[a]ll real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property or divisible property."  N.C. Gen. Stat. § 50-20(b)(1b) (2025).  Marital property is valued on the parties' date of separation.  N.C. Gen. Stat. § 50-21(b) (2025).  Separate property is defined as "[a]ll real and personal property acquired by a spouse before marriage or acquired by a spouse by devise, descent, or gift during the course of the marriage." N.C. Gen. Stat. § 50-20(b)(2) (2025).  Separate property includes "[t]he increase in value of separate property and the income derived from separate property."  *Id.*

In this case, Wife argues that the trial court erred in not accepting the parties' binding stipulations as to the townhouse, Wells Fargo Checking Account, and marital home.  She also contends the court erred in finding and concluding that Husband successfully traced out his separate contributions to his Rollover Account.  Finally, Wife claims the court erred in finding and concluding that the post-marital investment gains in Husband's investment accounts were his separate property.  We address each argument below.

**A. Townhome's Classification**

Wife argues that the trial court erred in finding and concluding that the parties' townhome was a mixed asset—with a separate component of $163,307.00 awarded to Husband and a $126,693 marital value—because the parties stipulated

to the townhome's classification and value. She asserts that the stipulations in the Pretrial Order were binding upon the parties and the trial court, so the court erred by considering classifying the townhome as a mixed asset. Husband counters that the "pre-trial stipulations . . . regarding their townhome were not definite and certain enough to prohibit the trial court's ability to trace out" Husband's "separate contributions and award those to him."

We start with our standard of review. Wife acknowledges that "[i]t is not clear from this Court's jurisprudence what standard of review applies to the trial court's failure to adhere to the binding stipulations of the parties in an equitable distribution . . . pretrial order." As noted above, the court considered some amendments to stipulations in the Pretrial Order at the beginning of the hearing, but the stipulations about the townhouse were not amended. Wife is correct that no case has explicitly stated the standard of review for a trial court's failure to follow "binding stipulations of the parties." But as a practical matter, prior cases have applied *de novo* review, as explained below. We thus review this issue *de novo*.

"As a general rule, this Court has noted that any material fact that has been in controversy between the parties may be established by stipulation." *Plomaritis v. Plomaritis*, 222 N.C. App. 94, 101, 730 S.E.2d 784, 789 (2012) (citations and ellipses omitted). Where a stipulation is "definite and certain," and no party has requested that it be set aside or for permission to present additional evidence contrary to the stipulated fact, the parties and the trial court are bound by the stipulation. *Id.* at

105-06, 730 S.E.2d at 791. But stipulations may be set aside in certain circumstances.

Our Supreme Court recently addressed our case law on setting aside stipulations in

*Smith v. Smith*:

> The Court of Appeals has aptly summarized the procedural and substantive principles that govern the setting aside of stipulations:
>
>> A party to a stipulation who desires to have it set aside should seek to do so by some direct proceeding, and, ordinarily, such relief may or should be sought by a motion to set aside the stipulation in the court in which the action is pending, on notice to the opposite party. Application to set aside a stipulation must be seasonably made; delay in asking for relief may defeat the right thereto. Whether a motion is seasonably made cannot be determined with mathematical precision.
>>
>> It is generally recognized that it is within the discretion of the court to set aside a stipulation of the parties relating to the conduct of a pending cause, where enforcement would result in injury to one of the parties and the other party would not be materially prejudiced by its being set aside. A stipulation entered into under a mistake as to a material fact concerning the ascertainment of which there has been reasonable diligence exercised is the proper subject for relief. Other proper justifications for setting aside a stipulation include: misrepresentations as to material facts, undue influence, collusion, duress, fraud, and inadvertence.

387 N.C. 255, 259-60, 912 S.E.2d 762, 765-66 (2025) (citations and brackets omitted).

Here, there was no request to set aside or modify the Pretrial Order's

stipulations regarding the townhouse (unlike the marital home, which we address below). Accordingly, the stipulation remained binding on the parties and the trial court. *See Plomaritis*, 222 N.C. App. at 105, 730 S.E.2d at 791. Because the stipulation's existence and terms are undisputed, the issue on appeal is not one of fact-finding or discretionary decision-making, but whether the trial court correctly applied the law governing the effect of binding stipulations. That determination involves the legal effect of undisputed facts, which is a question of law and consequently reviewed *de novo*. *See, e.g., Malinak v. Malinak,* 242 N.C. App. 609, 612, 775 S.E.2d 915, 916 (2015). "Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Reese v. Mecklenburg Cnty.*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 38 (2009) (citation omitted).

In the Pretrial Order, the townhome was included on Schedule D, which contained "a list of *marital* property upon which there [wa]s [d]isagreement as to the [d]istribution and [d]isagreement as to value." (Emphasis added.) The townhome did *not* appear on Schedule G, which listed assets with "[m]ixed, [m]arital and [s]eparate characteristics." In other words, the parties' stipulation to the townhome's classification as marital property was clear. The *only issues* the trial court had to resolve with respect to items listed on Schedule D were (1) the property's value and (2) which party would become the owner.

During the equitable distribution hearing, the parties stipulated to the

townhome's value, as the trial court confirmed by stating: "So we've got a stipulation that the value is 290." Counsel for both parties confirmed that this was correct. Husband also offered evidence consistent with the Pretrial Order in support of his contention that an unequal distribution would be equitable because of his separate contribution to the townhome. In response to his counsel's question, Husband testified that he would like the court to consider "giving [him] back [his] initial investment of $108,000," noting that he *"understand[s] that it's a marital asset*, but the initial part of it was from a separate account of $108,000." (Emphasis added.)

In the Order, the trial court found that the townhome's value was $290,000.00—per the parties' stipulation—but also "traced out" Husband's contributions by crediting Husband with his initial purchase price ($108,000) and $55,307 in expenses as his separate property. The court also found that this left a "marital and/or divisible value of $126,693.00." Thus, the trial court assigned the townhome a marital value of $126,693, rather than the stipulated $290,000, and treated the remainder as Husband's separate property.

This issue is controlled by our decision in *Clemons v. Clemons*, 265 N.C. App. 113, 828 S.E.2d 501 (2019). There, the parties stipulated that a townhome was the wife's separate property and had a net value of $186,000.00. *Id.* at 114, 828 S.E.2d at 503. In the equitable distribution order, however, the trial court found that the townhome contained a "marital component" and distributed that amount to the wife. *Id.* On appeal, we held that "[b]ecause the parties had stipulated that the townhome

12

was [the w]ife's separate property and that its value was $186,000.00, the trial court erred by classifying a portion of it as marital and attempting to value it." *Id.* at 121, 828 S.E.2d at 507.

Here, the trial court erred in classifying the townhome as a mixed marital and separate asset contrary to the parties' stipulation. As in *Clemons*, Husband and Wife stipulated to their townhome's value and its classification as marital property. *See id.* at 114, 828 S.E.2d at 503. In doing so, the parties "eliminate[d] the necessity of submitting that issue of fact" to the trial court and were precluded from taking an "inconsistent position," such as contending there was a separate component in the townhome's classification or value. *Smith*, 387 N.C. at 259, 912 S.E.2d at 765. The parties did not, however, stipulate to the townhome's distribution, and both parties requested an unequal distribution of the marital estate.

The Pretrial Order's terms further buttress the conclusion that the existence of a separate component was a factual issue removed from dispute. Because it was listed in Schedule D, the trial court had to determine *only* the item's value and to whom it would be distributed. Then, by reaching a stipulation on the townhome's value at the hearing, the parties further limited the issues before the trial court. And because neither party moved to set aside these stipulations, they were binding upon the parties. *See Smith*, 387 N.C. at 259-60, 912 S.E.2d at 765-66. And together, these stipulations supplied the trial court with the facts necessary to support a proper finding and reach the appropriate conclusion. *See Clemons*, 265 N.C. App. at 117,

828 S.E.2d at 505 ("In equitable distribution cases, stipulations in the pretrial order are intended to limit the evidence needed and to define the issues the trial court must decide."). They also narrowed the precise issue the trial court had to rule on: the townhome's distribution. *Id.* Thus, the court erred in finding and concluding that the townhome had a $163,307 separate component. *See id.* at 114, 828 S.E.2d at 503.

The trial court tried to reach an equitable result at the wrong stage of the process. As discussed above, when a party requests an equitable distribution, the trial court must conduct a three-step analysis. *See id.* at 115, 828 S.E.2d at 504 (noting that first, "the court must identify and classify all property as marital or separate"; "[s]econd, the court must determine the net value of the marital property as of the date of the parties' separation"; and "[t]hird, the court must distribute the marital property in an equitable manner"). During the third step—distribution— "the trial court may conclude, within its discretion, that an unequal distribution is equitable after considering the factors listed in [North Carolina General Statute Section] 50-20(c) and making sufficient findings of fact to support its conclusion." *Mugno*, 205 N.C. App. at 277, 695 S.E.2d at 498; *see also* N.C. Gen. Stat. § 50-20(c) (2025) (listing the distributional factors a trial court must consider upon determining "that an equal division is not equitable").

But here, instead of classifying the townhome as marital property (step one)— valued at $290,000 (step two)—and then considering Husband's separate contribution as a distributional factor supporting an unequal distribution (step

three), the trial court wrongly attempted to do equity in step two. In the Order, the court specifically rejected Husband's contention that he should receive an unequal distribution in his favor based upon the factor that the townhouse "was purchased entirely with his separate funds and was originally titled only in his name." The court found that Husband's separate contribution to the townhome's purchase did "not justify an unequal distribution in his favor" because the court "followed the source of funds rule," determining that Husband's "separate contributions to th[e] asset" should "be retained by him." As support for that finding, the court cited *McLean v McLean*, 88 N.C. App. 285, 363 S.E.2d 95 (1987). The trial court erred in relying on *McLean*, but that case explains why the court rejected Husband's contention for unequal distribution. *McLean* dealt with the *classification* of property as marital or separate, not an unequal distribution:

> It is true that there may be both marital and separate ownership interests in the same property. Our courts have adopted a source of funds approach to distinguish marital and separate contributions to a single asset. Under the source of funds approach, each party retains as separate property the amount he contributed to purchase the property plus passive appreciation in value.

88 N.C. App. at 288-89, 363 S.E.2d at 98 (citations omitted).

The parties had stipulated to the townhome's *classification* as marital property, so the trial court could not *classify* any portion of the townhome as separate property or assign any portion as having a separate value. *See Clemons*, 265 N.C. App. at 114, 828 S.E.2d at 503. Husband properly requested that the trial court

15

consider his separate contribution to the townhome's purchase as a *distributional factor* under North Carolina General Statute Section 50-20(c)—but the trial court rejected Husband's request based on its erroneous reclassification and valuation of the townhome. *See* N.C. Gen. Stat. 50-20(c). Instead, the court should have considered Husband's "contribution of his separate property to the marital estate [as] a distributional factor" under North Carolina General Statute Section 50-20(c). *Collins v. Collins*, 125 N.C. App. 113, 116, 479 S.E.2d 240, 242 (1997).

As we explained in *Clemons*:

> [B]y attempting to classify and value a "marital component" of the townhome contrary to the stipulations and evidence and then attempting an equitable result by dividing the net estate equally, the court put the cart before the horse. The trial court may in its discretion do equity in the distribution, including an unequal distribution if supported by the factors under [North Carolina General Statute Section] 50-20(c), but it may not use equity to classify or value marital property or debt. Where the trial court decides that an unequal distribution is equitable, the court must exercise its discretion to decide how much weight to give each factor supporting an unequal distribution. A single distributional factor may support an unequal division.

265 N.C. App. at 125, 828 S.E.2d at 509 (citations and quotation marks omitted).

We therefore reverse and remand for the trial court to properly classify and value the townhome in accordance with the parties' stipulations and to distribute it as well. *See id.* On remand, the trial court shall also make new findings as appropriate regarding the townhome's distribution, including reconsideration of

16

Husband's contentions related to the townhome as listed on Schedule H of the Pretrial Order. *See id.*

## B. Checking Account's Classification

Wife contends the trial court erred in "finding and concluding that Husband's [Wells Fargo] [C]hecking [A]ccount contained no marital funds because the parties stipulated, during trial, that it contained $5,477.00[1] in marital funds." As noted above, we review the trial court's failure to comply with a fact's clear and definite stipulation *de novo.*

In the Pretrial Order, the Wells Fargo Checking Account was listed on Schedule G, "items with [m]ixed, [m]arital and [s]eparate [c]haracteristics." Both parties agreed the Wells Fargo Checking Account's date-of-separation value was $12,465; Husband contended $5,447 was marital and the remainder was separate. The parties did not agree on the Wells Fargo Checking Account's value or classification. During the trial, Husband presented some evidence on the Wells Fargo Checking Account and during Husband's testimony, Wife's counsel agreed that the account's marital value was $5,447.00:

> [HUSBAND'S COUNSEL]: He's saying that $5,477 –
>
> [WIFE'S COUNSEL]: 447?
>
> [HUSBAND'S COUNSEL]: Correct, is marital.

---

[1] It appears this number is a typographical error. The number listed in Schedule G and stipulated to at trial was $5,447.

17

[WIFE'S COUNSEL]: Okay. We stipulate that that's the marital component and the rest of it is separate.

. . .

[WIFE'S COUNSEL]: Thank you.

THE COURT: So what's my stipulated amount on this one again, please, [Wife's counsel]?

[WIFE'S COUNSEL]: $5,447 is the number that's in the middle of the page.

THE COURT: I see that. Do you accept that stipulation –

[HUSBAND'S COUNSEL]: Yes, Your Honor.

However, in the Order, the court found and concluded that the Wells Fargo Checking Account's date-of-separation value—$12,465—was Husband's separate property.

Wife is correct that the trial court overlooked the stipulation the parties reached during the equitable distribution hearing. Husband argues only that he "introduced an exhibit, without objection, that during the marriage [he had] used that money and some of his separate funds to pay for marital expenses." In Husband's view, that exhibit supported the court's finding that the entire account was his separate property. Husband is correct that he testified about the exhibit, but the exhibit he references also show he had deposited $5,447 into the Wells Fargo Checking Account during the marriage. He testified about this exhibit just before the parties stipulated to the account's marital value. Husband's attorney stipulated that

the marital value was $5,447—the same number he had alleged as the marital value on Schedule G of the Pretrial Order—and during the trial, Wife's counsel also stipulated to the amount.

Therefore, with respect to the Wells Fargo Checking Account, the trial court erred by finding that the account's entire value was Husband's separate property. Based on the stipulation at trial, the account's marital value was $5,447 and the remainder of the account balance should have been classified as Husband's separate property.

## C. **Marital Residence's Valuation**

Next, Wife contends that the trial court "erred in finding and concluding that the distributable value of the former marital residence was $1,275,000 when the parties stipulated that its distributable value was $1,100,000." Wife acknowledges that Husband filed the Notice and she filed a response and motion in limine before the trial. She also acknowledges that the trial court considered the arguments from both her and Husband before beginning to receive evidence. Yet she claims that the trial court did not set aside the Pretrial Order's stipulation, but ruled Husband could "introduce a newer appraisal at a higher value."

The marital home was listed on Schedule C, meaning the parties agreed that it (1) was marital property and (2) had a $1,100,000 date-of-separation value. Before the hearing, Husband filed the Notice, contending the marital residence had a "current market value" of $1,375,000. Although the trial court denied Husband's

19

request to value the marital home and the lot as two separate parcels, it ruled that Husband could offer evidence of the marital home's value at the time of the hearing. Then, at the hearing, an appraiser testified that the marital home's fair market value was $1,275,00. In the Order, the court found that the marital home's date-of-distribution value was $1,275,000 and that the "$175,000.00 increase in value from the date of separation [was] due to passive market factors and that increase represents, therefore, divisible property."

Wife argues that this issue is subject to the same standard of review as the first two issues because the trial court's findings of fact were "contrary to stipulations contained in an ED pretrial order" and so they are "reversible error." However, the trial court *did* rule on Husband's Notice and Wife's motion in limine regarding Husband's request to "amend" his contentions. It allowed Husband's request as to the marital home, at least in part. So we review the trial court's findings on the marital home's valuation only to determine if they are supported by the evidence. *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992) ("[T]he standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." (citation omitted)).

Wife relies on *Smith v. Smith* to argue that because the trial court did not "set aside" the Pretrial Order's stipulation as to the marital home's date-of-separation value, it erred by considering Husband's new-appraisal evidence of the home's value

at the date of distribution. In *Smith*, although the wife had "moved to set aside the 14 January 2019 stipulations, *the record nowhere indicate[d] that the trial court ruled on the motion in any direct proceeding*. Nor did the court dispose of the motion either during or after the equitable distribution hearing." 387 N.C. at 260, 912 S.E.2d at 766 (emphasis added). But this case is different—for here, unlike in *Smith*, the trial court *did* "rule[ ] on the motion" of both Husband and Wife in a "direct proceeding." *Id.* And this Court has previously held that no particular form is required for a parties' request to present evidence different from a stipulation; the important inquiry is whether the party made the request and the trial court addressed the request at the hearing. *See, e.g., Lowery v. Locklear Const.*, 132 N.C. App. 510, 514, 512 S.E.2d 477, 479 (1999) ("[The d]efendants moved to submit additional evidence which sought to relieve them from a previously made stipulation. *This motion was tantamount to a motion to set aside a stipulation* and should have been treated as such by the Commission. The fact that the motion was not delineated as one to 'set aside a stipulation' is not material." (emphasis added)).

And unlike *Smith*, the hearing on Husband's Notice and Wife's motion in limine fills the first twenty-six pages of the trial transcript. Husband's Notice was "tantamount to a motion to set aside a stipulation," *id.*, and the trial court correctly considered it as such. The court considered and ruled on both parties' requests, allowing some modifications to the Pretrial Order and denying others. Although Wife claimed that Husband should have instead filed a motion under Rules 59 or 60 of the

21

North Carolina Rules of Civil Procedure instead of the Notice, the court considered the substance of both parties' contentions and requests and ruled that the Pretrial Order would be amended. *See id.* Wife has neither challenged this ruling on appeal nor asserted that the trial court made any legal error or abused its discretion by amending the Pretrial Order. As a result, the facts and ruling in this case are not controlled by *Smith* as to the Pretrial Order's original stipulation on the marital home's value.

The evidence Husband presented regarding the marital home's value at the date of distribution was within the scope of the trial court's ruling, which modified the Pretrial Order's stipulations on the marital home's value at both the date of separation and the date of distribution. The evidence supports the trial court's findings as to the value of the marital home. *Shear*, 107 N.C. App. at 160, 418 S.E.2d at 845. Therefore, the trial court did not err in the marital home's classification or valuation.

**D. Rollover Account's Classification**

Wife argues that the "trial court erred in finding and concluding that Husband met his burden to successfully trace out separate contributions to his" Rollover Account, and that "Husband failed to trace the separate property remaining in his [Rollover Account] as of the date of separation." She further contends the trial court failed to account for $37,441.86 in withdrawals from the Rollover Account shortly

before the parties' separation.[2]

As noted above, this court reviews the trial court's findings of fact to determine if they are supported by competent evidence and whether the findings support the conclusions of law. *See id.* We review the trial court's classification of the Rollover Account *de novo. See Romulus v. Romulus*, 215 N.C. App. 495, 500, 715 S.E.2d 308, 312 (2011) ("Because the classification of property in an equitable distribution proceeding requires the application of legal principles, this determination is most appropriately considered a conclusion of law." (citation and quotation marks omitted)).

Although separate property includes the "increase in value of separate property and income derived from separate property[,]" an increase in the separate property's value can also be marital property in certain circumstances:

> If however, the separate property enjoys an increase in value attributable to the substantial financial, managerial, and other contributions of the marital estate (an active increase), any increase in value would be marital property. If a passive increase in separate property occurs, i.e. inflation, that increase would remain separate property. Commingling of separate property with marital property, occurring during the marriage and before the date of separation, does not necessarily transmute separate property into marital property. Transmutation would occur, however, if the party claiming the property to be his separate property is unable to trace the initial deposit into its form at the date of separation.

---

[2] Wife also argues the trial court impermissibly placed the burden on her to prove that the separate property's gain was active and thus marital. For ease of reading, this issue is addressed in the following section, as Wife raises the same argument as to three other accounts.

*Fountain v. Fountain*, 148 N.C. App. 329, 333, 559 S.E.2d 25, 29 (2002) (citations,

quotation marks, and brackets omitted).

As for Husband's contributions to the Rollover Account, the trial court's

Finding No. 15(C) states:

> On the date of separation [Husband] owned a Charles Schwab IRA Rollover Account with account number ending in 4691. The undisputed evidence of record establishes that this account contained both separate and marital funds. [Husband] has produced sufficient evidence to trace out the separate contributions to this account. This account originally was managed by OptionsXpress. OptionsXpress was purchased by Charles Schwab on October 9, 2017. The original OptionsXpress account was created by [Husband] on January 5, 2016 to accept rolled over IRA proceeds from two retirement accounts of [Husband]. On January 5, 2016[, Husband] rolled into this account the sum of $239,5I5.97 from his US Airways Retirement Plan for Pilots, which was established prior to the marriage of the parties and thereafter received marital contributions as well. On January 6, 2016 [Husband] rolled into this account the sum of $315,559.83 from a Fidelity Retirement Account, which was established prior to the marriage of the parties and thereafter received marital contributions as well.
>
> The documentary evidence presented establishes that on the date of the marriage of these parties the US Airways Retirement Plan for Pilots contained the sum of $132,813.62. During the marriage this account received marital contributions of $101,590.16. The documentary evidence presented further establishes that the Fidelity Retirement Account on the date of the marriage of the parties contained the sum of $182,421.36. During the marriage this Fidelity account received marital contributions totaling $115,159.50.
>
> [Husband] also has presented undisputed documentary evidence that traces further separate

24

> contributions to the OptionsXpress Account (later becoming Charles Schwab #4691) *from his separate PBGC premarital retirement monies totaling $41,967.69.*
>
> At the date of separation, the Charles Schwab #4691 account contained a total sum of $676,561.95. As established above, through pre-date of marriage amounts and separate contributions, a total sum of $357,202.67 of this account constitutes [Husband]'s separate property. Additionally, the total sum of the marital contributions established is $216,749.66. Therefore, the date of separation amount in this account consisted of nonpassive combined separate and marital amounts of $573,952.33.

(Emphasis added.) Wife challenges the italicized portion of the above finding—that the source of the separate contributions was Husband's separate PBGC[3] account—as unsupported by the evidence. She argues that Husband presented no evidence tending to show $25,000 in "separate" deposits listed in Exhibit 15 came from his "separate PBGC premarital retirement" funds.

At the hearing, Husband submitted Exhibit 15, in which he attempted to trace out the separate assets in the Rollover Account. That exhibit showed that Husband had deposited five checks—totaling $25,000.00—into an OptionsXpress account before that account was rolled into the Rollover Account. Exhibit 15 listed the date, amount, and source of each deposit—funds gifted from Husband's mother, premarital CDs, farm income from his separate farm property and separate Schwab account. During Husband's testimony about the exhibit, his counsel asked him whether the checks came from the separate, earlier retirement money from PBGC. Husband

---

[3] PBGC stands for Pension Benefit Guaranty Corporation.

answered "no." In Wife's view, Husband did not provide evidence that the sources of the funds in the listed checks were separate.

Husband responds that he presented documentary evidence of each deposit made into the account during the marriage. He also notes that immediately after the testimony Wife noted, his attorney asked him about why the funds for each deposit were separate. Husband testified about each check, stating that—as also reflected on the exhibit—each came from either "farm income, a gift from my mother," or another separate Schwab account.

So to the extent the trial court found that these contributions were separate because they came from "retirement money from PBGC," Wife is correct that the evidence does not support this small portion of the finding. However, the trial court's finding that these deposits came from separate funds is supported by the evidence, as all the sources Husband identified were his separate funds. *See Shear*, 107 N.C. App. at 160, 418 S.E.2d at 845

Wife also argues that Husband made two withdrawals from the Rollover Account—totaling $37,441.86—within the weeks leading up to the parties' separation. She asserts that although Husband testified about the reasons for these withdrawals, he did not provide evidence to trace the withdrawn funds to either the separate or marital portions of the Rollover Account. Therefore, according to Wife, the "trial court did not analyze whether the $37,441.86 withdrawn constituted separate funds or marital funds." Wife contends these funds should have been

considered as Husband's separate funds, thus reducing the separate portion of the Rollover Account at the date of separation. But Wife fails to point to any evidence that would have allowed the trial court to "trace" the source of these withdrawals as either separate or marital, nor does she cite any legal authority requiring the trial court to "trace" each withdrawal from an account *during* the parties' marriage and before the date of separation.

The trial court properly found the Rollover Account's marital and separate values at the date of separation. *See* N.C. Gen. Stat. § 50-21(b). Wife did not identify Husband's $37,441.86 worth of withdrawals shortly before their separation as one of the factors favoring an unequal distribution in her favor. Except for the reference to the PBGC account discussed above, the trial court's findings regarding the Rollover Account are supported by sufficient evidence, and Wife has failed to demonstrate any error in the account's classification and valuation of the Rollover Account based on these contributions. That portion of the trial court's order is affirmed.

## E. Investment Accounts' Classification

Finally, Wife argues that the "trial court erred in finding and concluding that the post-marital investment gains in Husband's retirement accounts were his sole and separate property because he actively managed the accounts." She contends that the "appreciation of a spouse's pre-marital investment account during the marriage is considered marital unless that spouse establishes it appreciated from passive market forces." We review the trial court's classification of the investment accounts

*de novo. Romulus*, 215 N.C. App. at 500, 715 S.E.2d at 312.

In the Order, as to Husband's three retirement accounts—Schwab #8193, #8773, and #0407—the trial court made identical findings of fact: "The [c]ourt fails to find that the simple few trades made on this account by [Husband] during the marriage amounts 'substantial activity.' These gains represent passive appreciation and must be declared separate property in this order." The court also found:

> [T]he investing activity conducted by [Husband] in each of these separate accounts did not arise to "substantial activity" such that appreciation of any of these separate property accounts was acquired by the marital estate. [Wife] had the burden to prove that any appreciation in these separate accounts was due to substantial services provided by the marital estate. [Wife] failed to provide evidence of several of the factors required as established in *O'Brien v. O'Brien*, 508 S.E.2d 300, 131 N.C. App. 411 (1998).

Wife claims the trial court's main error was placing the burden of proof on her to prove that the gains during the marriage were marital, when the law requires Husband prove they were separate. "[U]nder North Carolina law," Wife says, Husband had the burden "to establish that any appreciation of separate property is passive," and "[i]t is no surprise that the trial court reached the wrong conclusion when it placed the burden of proof on the wrong party."

In *Ciobanu v. Ciobanu*, this Court discussed the burdens of proof as to the classification of gains on separate property during the marriage:

> In this case, the plaintiff, *as the party claiming the increases in value to be marital, had the burden of showing*

28

> *by the preponderance of the evidence that the increases in value were marital property.*  As the findings of fact indicate, *she met her burden by showing that all the increases in value were "acquired" by either or both spouses, were "acquired" during the course of the marriage, were "acquired" before the date of separation, and were presently owned.*  Accordingly*, the burden shifted to the defendant to show by the preponderance of the evidence that the "acquired" increases in value to the properties were his separate property.*  On this issue, the defendant introduced evidence that the increases in value were caused by inflation and were therefore passive.  The plaintiff's evidence on this issue, as reflected by the findings of fact, tends to show that the plaintiff helped manage the Glenwood property, made significant homemaker contributions to the Leesville property, and helped improve both properties.  This conflict in the evidence required the trial court to resolve the issue of whether the increases were entirely active, entirely passive, or a combination of both.

104 N.C. App. 461, 466, 409 S.E.2d 749, 752 (1991) (citation omitted) (emphasis added).  Put another way,

> if a spouse proves that separate property has appreciated after the marriage and before separation, then the law presumes that the appreciation is active, and therefore marital property.  Therefore, once the presumption attaches, the spouse who owns the separate property shoulders the burden of proving that the appreciation was not active, that is, not the product of "marital labor, talent, or fund."

2 Reynolds on *North Carolina Family Law* § 6.29(c)(1) (6th ed. 2020) (footnotes omitted).

Thus, both Wife and Husband had burdens of proof as to the gains on Husband's separate accounts during the marriage.  *Ciobanu*, 104 N.C. App. at 466,

409 S.E.2d at 752. Wife—as the party claiming that the gains on Husband's separate investment accounts were marital—had the burden of proving that classification by a preponderance of the evidence. *See Porter v. Porter*, 252 N.C. App. 321, 326-27, 798 S.E.2d 400, 405 (2017) ("[T]his Court has long held that in an equitable distribution proceeding, the party seeking the specific classification has the burden of proving that classification by the preponderance of the evidence."). But as explained in *Ciobanu*, Wife's evidence met her burden of proof by showing that "all the increases in value were 'acquired' by either or both spouses, were 'acquired' during the course of the marriage, were 'acquired' before the date of separation, and were presently owned." *Ciobanu*, 104 N.C. App. at 466, 409 S.E.2d at 752.

At trial, Wife countered Husband's contention that the gains were passive by arguing the evidence showed that Husband "did not have an investment broker, let alone rely on one to make investment decisions; rather, he studied CNBC, briefing.com, and his Ameritrade platform to make investment decisions completely on his own." She presented evidence he has made "trades of his investments 44 times in Schwab #8193, more than 50 times in Schwab #8773, and 525 times in Schwab #0407." The trial court's findings about the "gains and losses" in the various investment accounts show that these gains were presumptively marital because "all the increases in value were 'acquired' by either or both spouses, were 'acquired' during the course of the marriage, were 'acquired' before the date of separation, and were presently owned." *Ciobanu*, 104 N.C. App. at 466, 409 S.E.2d at 752 (citation

omitted).

Upon this showing, Wife had met her burden of proof, and the law *presumed* the gains during the marriage were *active* (not passive) and thus marital property. *See* 2 Reynolds on *North Carolina Family Law* § 6.29(c)(1). Then, the burden shifted to Husband to prove that the gains were passive, not active. *See O'Brien v. O'Brien*, 131 N.C. App. 411, 420, 508 S.E.2d 300, 306 (1998) ("[T]he party seeking to establish that any appreciation of separate property is passive bears the burden of proving such by the preponderance of the evidence.").

Here, the trial court placed the burden on the wrong party. "When the judge has expressly placed the burden of proof upon the wrong party, and conflicting inferences may be drawn from the evidence, it is impossible for an appellate court to know whether the erroneous allocation of the burden dictated his findings of fact." *Joyner v. Garrett*, 279 N.C. 226, 237, 182 S.E.2d 553, 561 (1971). In such instances, remand is appropriate for the trial court to reconsider its findings with the burden on the correct party. *Id.*

Despite the trial court's characterization of Husband's management of his accounts as "simple few trades," we cannot say that the error did not "dictate[ the trial court's] findings of fact." *Id.* The evidence supports conflicting inferences that could support the finding of either passive or active gain. For instance, Husband conducted his own research in making his investments and did not employ a broker. He made more trades in some accounts than others, so the extent of his activity in a

particular account may be relevant. And over the course of the parties' eight-and-a-half-year marriage, Husband made thousands of trades across all his accounts, which could be viewed as falling short of "substantial activity," as the trial court found, but could support the opposite conclusion if the burden were correctly placed on Husband. The trial court must make this determination, because "[a]lthough we review the trial court's conclusions of law *de novo*, we cannot reweigh the evidence and credibility of the witnesses." *Romulus*, 215 N.C. App. at 502, 715 S.E.2d at 314.

Thus, Wife met her burden of proof, triggering the presumption that the gains during the marriage were marital. *See Ciobanu*, 104 N.C. App. at 466, 409 S.E.2d at 752. The burden then shifted to Husband to show the gains were passive. *See id.* Because the evidence supports conflicting inferences, we remand for the trial court to determine whether Husband met his burden of proving that the gains were passive. *Joyner*, 279 N.C. at 237, 182 S.E.2d at 561.

## III.    Conclusion

For the reasons explained above, we remand for findings of fact on: (1) the townhome's classification and valuation; (2) the Wells Fargo Checking Account's marital portion; and (3) the classification of gains during the marriage in Husband's separate investment accounts ending in #8193, #8773, and #0407, and conclusions of law based on those findings. After making such findings and conclusions on the classification and valuation of these items and the net value of the entire marital estate, the trial court shall, in its discretion, make additional findings and conclusions

32

regarding Husband's contentions for an unequal distribution based on his separate contributions to the townhome. The court shall then determine whether the distribution should be equal or unequal and make new findings regarding the distribution and distributive award based on its new findings on remand. *See Foxx v. Foxx*, 282 N.C. App. 721, 724, 872 S.E.2d 369, 372 (2022) ("When this Court remands an equitable distribution order for more specific findings of fact, that remand authorizes the trial court to recalculate related portions of the order that are impacted by the findings made on remand if necessary.").

If either party requests a hearing on remand to present evidence needed to comply with this Court's mandate for the new date of distribution, the trial court shall hold a hearing limited to that evidence in accord with this opinion. If neither party requests a hearing, the trial court may in its discretion enter a new order based on the existing evidence or hold a hearing. [4]

AFFIRMED IN PART; VACATED IN PART; AND REMANDED.

Chief Judge DILLON concurs in part and dissents in part.

Judge TYSON concurs in part and dissents in part.

---

[4] Despite the two concurring in part and dissenting in part opinions, the trial court shall follow the remand instructions in this majority opinion because at least two judges agree on each part of these instructions.

DILLON, Chief Judge, concurring in part and dissenting in part.

I concur with the majority opinion except for its treatment of the marital home. Based on the reasoning below, I conclude the trial court erred by classifying the post-separation increase in value of the home (totaling $175,000.00) as divisible, where the parties had stipulated the home was entirely marital in nature.

## IV. Background

The parties were married in 2011. They purchased their marital home in 2015. They separated in 2019 and divorced in 2021. Regarding the marital home, when the parties separated in 2019, Wife remained in the home; Husband moved out.

On 12 September 2023, four *years* after the parties separated and two years after they divorced, the parties entered a pre-trial order stipulating the home was entirely marital with a value of $1,100,000.00 as of the date of separation in 2019.[5] However, in January 2024, just four *months* after entering the stipulation and a few weeks prior to the beginning of the parties' equitable distribution trial, Husband filed a notice indicating his intention to offer evidence that the home and increased in value by $175,000.00 since the parties' 2019 separation. Wife, however, sought to exclude the evidence based on the parties' 2023 stipulation.

The trial court, however, allowed Husband's evidence regarding the home's

---

[5] The "marital home" as used herein refers to the house located on Lots 246 and 248 the parties purchased in 2015 *and* a vacant lot across the street (Lot 244) which they purchased in 2017 to provide a better view from their home. In 2018, the parties recorded a recombination plat, combining the vacant lot with the lots their home was on into a single larger lot (new "Lot 246"). In its equitable distribution order, the trial court found the parties intended their 2023 stipulation regarding the marital home to include the vacant lot.

post-separation increase in value. And in its equitable distribution order, the trial court classified this increase as divisible property, valued it at $175,000, and distributed it (along with the marital portion of the home) to Wife. I conclude, however, that the record shows that in doing so, the trial court did *not* set aside the parties' 2023 stipulation regarding the home's classification and value. Rather, the trial court proceeded in classifying, valuing, and distributing the post-separation increase, essentially concluding that the parties' stipulation did not cover the divisible portion of the home and that, therefore, it did not need to set aside the stipulation to reach the post-separation increase.

I disagree with the trial court's interpretation of the parties' stipulation, as explained below. Specifically, I conclude that by stipulating the home was entirely marital, the parties essentially stipulated there was no divisible portion for which either party would seek equitable distribution.

## V.    Analysis

There are two rationales by which a trial court may classify, value, and distribute a certain property in a manner in which the property was not classified, valued, or distributed as stipulated by the parties in a pretrial order.

First, as our Supreme Court has recognized (as explained in the majority opinion), a trial court is afforded limited discretion to *set aside* a pretrial stipulation regarding a property without the consent of both parties:

> A party to a stipulation who desires to have it set aside

should seek to do so by some direct proceeding, and, ordinarily, such relief may or should be sought by a motion to set aside the stipulation in the court in which the action is pending, on notice to the opposite party. Application to set aside a stipulation must be seasonably made; delay in asking for relief may defeat the right thereto. Whether a motion is seasonably made . . . cannot be determined with mathematical precision.

It is generally recognized that it is within the discretion of the court to set aside a stipulation of the parties relating to the conduct of a pending cause . . . .

*Smith v. Smith*, 387 N.C. 255, 259–60 (2025) (quoting, with approval, *Lowery v. Locklear*, 132 N.C. App. 510, 513–14 (1999)). The Court explained the trial court has discretion to set aside a stipulation in those situations "where enforcement [of the stipulation] would result in injury to one of the parties and the other party would not be materially prejudiced by its being set aside." *Id.* at 260. And the Court identified situations where a trial court could exercise this discretion, as follows:

A stipulation entered into under a mistake as to a material fact concerning the ascertainment of which there has been reasonable diligence exercised is the proper subject for relief. Other proper justifications for setting aside a stipulation include: misrepresentations as to material facts, undue influence, collusion, duress, fraud, and inadvertence.

*Id.* *See also* N.C.G.S. § 1A-1, Rule 16(a) (pretrial stipulation order "when entered controls the subsequent course of action, unless modified at the trial to prevent manifest injustice").

Second, our Court has recognized that a trial court may, otherwise, classify,

value, and distribute any property *not mentioned in the stipulation order*, as in this circumstance there is no stipulation which needs to be set aside. Specifically, in affirming a trial court's valuing, classifying, and distributing a tax refund *not* mentioned in the parties' pre-trial stipulation order, we stated:

> When entered, [the pre-trial] order *was binding upon the parties as to all assets classified as marital property.* However, with respect to any property not listed in the pre-trial agreement between the parties, plaintiff has not waived its inclusion in the equitable distribution. We hold that the trial judge did not err in considering the tax refund as marital property.

*Allen v. Allen*, 168 N.C. App. 368, 373–74 (2005) (emphasis added) (internal citations omitted). *See also Plomaritis v. Plomaritis*, 222 N.C. App. 94, 103–04 (2012) (quoting *Allen*, 168 N.C. App. at 373–74). That is, there need not be any of the justifications identified in *Smith* for a trial court to value, classify, and distribute an asset not mentioned in the stipulated pretrial order.

Here, I conclude the trial court was *not* intending to *set aside* the stipulation in the pretrial order concerning the marital home, per *Smith*. Rather the trial court essentially reasoned it could deal with the post-separation increase in the home's value as divisible property because the pretrial order did not mention divisible property, per *Allen*.

For instance, prior to the hearing, Husband did *not* expressly move for the trial court "to set aside" the pretrial order or any stipulation therein, but rather merely noticed that he intended to put forth evidence concerning the post-separation increase

in the home's value. Of course, as explained by the majority, Husband's failure to expressly ask the trial court to "set aside" the parties' stipulation is not fatal, as long as it was understood that Husband was seeking relief from his prior stipulation.

However, during the hearing, Husband's counsel argued that, by entering the stipulation, his client had *not* waived the trial court's consideration of the divisible increase in the marital home's value:

> [HUSBAND'S COUNSEL]: So we don't have a sheet to put in separate and divisible property [within the pretrial order], so [the divisible portion of the marital home] constitutes property not listed in the pretrial agreement. So we have not waived this inclusion in the equitable distribution.

Clearly, Husband's counsel was making an argument similar to the one made in *Allen* regarding the tax refund. Further, in his appellate brief, Husband concedes the trial court was merely "interpret[ing] the parties Pre-Trial Order as being silent as to the issue of any 'divisible property' interest to be distributed by the court[,]" and, therefore, the pretrial order, as written, did not "require the trial court to disregard properly presented evidence of the divisible interest in [the marital home]."

Also, in allowing Husband to present evidence concerning the post-separation increase in value of the home, the trial court expressly reasoned that it would follow the pretrial stipulation *but that* the pretrial stipulation did not prevent its consideration of Husband's evidence:

> THE COURT: Just with the time that's going on in this case, I'm inclined to operate off the pretrial order. Now, I

> will say, as to -- the Court does have to receive evidence, [Husband's counsel] is correct on the [date of] distribution value, particularly of the home.

Finally, in its equitable distribution order, the trial court acknowledges the parties entered into the pretrial order but never stated it was setting any portion of that order aside, much less did the trial court state any justification recognized by our Supreme Court to set aside the stipulation. *See Smith*, 387 N.C. at 260. That is, the trial court did not make any finding that there had been any "misrepresentations as to material facts, undue influence, collusion, duress, fraud, and inadvertence" to justify setting aside the parties' stipulation regarding the marital home. *See id.*

I conclude the trial court erred by determining Husband had not waived its consideration of the post-separation increase in the home's value by entering the pretrial order. The pretrial order was strict in the issues to be presented and decided by the trial court:

> AND IT APPEARING that by their signatures affixed hereto, each party stipulates that he or she agree with the facts [and] issues classified as agreed upon and stipulates the facts and issues classified as being in dispute are accurately reflected and that *there are no other issues to be determined by the Court*[.]

(Emphasis added). And Exhibit C in the pretrial order expressly references the marital home and the parties' agreement that the home be treated entirely as marital. The pretrial order contains another exhibit listing assets where either Husband or Wife placed at issue the assets had both marital and separate

characteristics. Husband could have easily added an exhibit as part of the pretrial order putting at issue whether the marital home had both marital and divisible characteristics. But he did not. *See Allen*, 168 N.C. App. at 373 (pretrial order is not binding only with respect "to any property not listed" therein). Rather, he stipulated the home was entirely marital, a stipulation which the trial court did not set aside.

With that said, my vote is to reverse the portion of the order identifying, valuing, and distributing the post-separation increase of the marital home. I agree with the majority that on remand the trial court may reconsider whether an equal division is equitable. And my vote would include that the trial court can include in its reconsideration its findings that Husband contributed more of his separate property for the purchase of the marital home.[6]

---

[6] I do not vote to allow the trial court to reconsider whether to set aside the stipulation in order to then consider any post-separation increase in value of the marital home. Specifically, there is no evidence in the record to support any of the grounds articulated by our Supreme Court in *Smith* to justify the trial court to set aside Husband's stipulation.

For instance, there is no evidence that Husband entered the stipulation based on "a mistake as to a material fact concerning the ascertainment of which there has been reasonable diligence exercised is the proper subject for relief." *Smith*, 387 N.C. at 260. Rather, the record shows Husband failed to exercise reasonable diligence prior to entering into the September 2023 stipulation to determine whether there had been any increase in value in the marital home after 2019. (See footnote 1.)

Further, there is no evidence regarding any "misrepresentations as to material facts, undue influence, collusion, duress, fraud, [or] inadvertence." *Id.* Husband's failure to include any divisible portion in the stipulation was due to a mistake of fact which he could have ascertained after reasonable diligence, not due to "inadvertence." That is, there is no evidence that Husband intended to include the post-separation increase but through oversight failed to include it in the stipulation pre-trial order.

TYSON, Judge, concurring in part and dissenting in part.

The majority's opinion correctly affirms the marital home being valued at an amount that is contrary to the parties' pre-trial stipulation of value. I vote to affirm the trial court's equitable distribution order on the marital home and to remand for findings on gains in the investment accounts and the Wells Fargo checking account.

The stipulation found in the pre-trial order afforded a basis for a judicial decision of the townhome's classification. Husband's separate contributions component of the townhome is properly affirmed. It is unnecessary to remand due to the appreciation of the value of the asset during the marriage was passive. If there is an alternative basis to affirm the trial court's order, it should be affirmed. *Payne v. Buffalo Reinsurance Co.*, 69 N.C. App. 551, 555, 317 S.E.2d 408, 411 (1984). ("a judgment that is correct must be upheld even if it was entered for the wrong reason.") I respectfully dissent in part.

## VI.    Townhome

Prior to the hearing, the parties stipulated:

> 10.    Schedule D (attached hereto) is a list of marital property upon which there is *Disagreement as to Distribution and Disagreement as to Value*.
>
> . . . .
>
> 20.    The presiding Judge shall rule on the following:
>
> . . . .
>
> (c)    What is the *value of and which party shall be the owner* of the items listed on Schedule D?

(bold removed; emphasis supplied)

In the pre-trial order, the townhome was included on the order's Schedule D, labeled as "a list of *marital* property upon which there is Disagreement as to the Distribution and Disagreement as to Value." (emphasis supplied). Additionally, the parties agreed in the pre-trial order the *only issues* the trial court was to resolve with respect to items listed on Schedule D were: (1) the value of the property; and, (2) "which party shall be the owner of the items . . . "

At the hearing, the parties again stipulated the market value of the townhome as being $290,000.00. Husband offered evidence tending to show he had invested $108,000.00 of his separate money prior to the marriage to purchase the townhome for his daughter and grandchild and it had been titled in his separate name. He acknowledged during his testimony the townhome was marital property but asserted and asked for his $108,000.00 separate initial investment to be credited. He also testified he had independently and separately spent $55,307.00 on expenses related to the townhome. Husband does not challenge the stipulated value of nor the classification of the townhome as martial property. These separate property expenditures by Husband do not appear to be disputed by Wife.

The trial court's order *could have* accomplished a similar split in the $290,000.00 townhome value, while classifying the entire value as marital, as stipulated, by simply finding an unequal division in the asset in Husband's favor of the trial court's order, instead of purportedly misclassifying a portion of the

townhome's value as Husband's separate property.

Husband, as the appellee, is under no obligation to argue an alternate *legal* bases to support the presumed to be correct order on appeal. *See* N.C. R. App. P., Rule 28. Wife carries the burden to show error and prejudice.

## VII.   Conclusion

Our Court has long held: "[A] judgment that is correct must be upheld even if it was entered for the wrong reason." *Payne*, 69 N.C. App. at 555, 317 S.E.2d at 411. Wife cannot demonstrate any reversible prejudice on the townhome. I concur in part and respectfully dissent in part.